**TALLAHASSEE MEMORIAL REGIONAL MEDICAL CENTER, et al.,**
**Plaintiffs-Appellees,**

**v.**

**Otis R. BOWEN, Secretary of Health and Human Services,**
**Defendant-Appellant.**

**BAPTIST HOSPITAL OF MIAMI, et al.,**
**Plaintiffs-Appellees/Cross-Appellants,**

**v.**

**Otis BOWEN, Secretary of Health & Human Services,**
**Defendant-Appellant/Cross-Appellee.**

**PARKWAY MEDICAL CENTER, Palm Beach Gardens Community Hospital, Clearwater Community Hospital, and Amisub of Florida, Plaintiffs-Appellees/Cross-Appellants,**

**v.**

**Otis BOWEN, etc., et al.,**
**Defendants-Appellants/Cross-Appellees.**

**Nos. 85–3839, 85–5131.**

United States Court of Appeals,
Eleventh Circuit.

May 5, 1987.

Edmondson, Circuit Judge, concurred in part and dissented in part and filed an opinion.

W. Thomas Dillard, U.S. Atty., Tallahassee, Fla., for defendant-appellant in No. 85–3839.

Edgar C. Morrison, Jr., Office of Gen. Counsel, Dept. of HHS, Anthony J. Steinmeyer and Barbara C. Biddle, Appellate Staff, Civil Div., U.S. Dept. of Justice, Washington, D.C., for defendants-appellants.

Leonard C. Homer, Ober, Kaler, Grimes & Shriver, Baltimore, Md., Tallahassee Memorial Regional Medical Center.

Leon B. Kellner, U.S. Atty., and Patricia D. Kenny, Asst. U.S. Atty., Miami, Fla., for defendants-appellants in No. 85–5131.

Michael J. Murphy, Gaebe & Murphy, Coral Gables, Fla., Robert A. Klein and John R. Hellow, Los Angeles, Cal., for Parkway Medical Center.

Margaret M. Manning, Ober, Kaler, Grimes & Shriver, Baltimore, Md., for Baptist Hosp. of Miami and Tallahassee Memorial Regional Medical Center.

Before CLARK, EDMONDSON and KEITH *, Circuit Judges.

CLARK, Circuit Judge:

In this complex case, the plaintiff hospitals challenged the application of a 1979 regulation, promulgated by the defendant Secretary of Health and Human Services, regarding reimbursement under Medicare of medical malpractice insurance costs. The district courts below invalidated the 1979 rule, and awarded reimbursement under the pre–1979 regulation. During the briefing in the Secretary's appeal to this court, the Secretary promulgated a new regulation to replace the invalid 1979 rule. The Secretary now argues that this case is moot because the 1979 rule is no longer in effect. The Secretary also argues that five hospitals that "self-disallowed" certain costs should be denied relief. For reasons set out in this opinion, we affirm the rulings of the district courts below and order the Secretary to pay all of the hospitals under the pre–1979 regulations.

## I. FACTUAL AND PROCEDURAL BACKGROUND

To understand the issues presented in this case, it is necessary to review in some detail the underlying facts of the case and the progress of the litigation, both in the district courts below and in this court.

## A. The Medicare Program

In 1965, Congress enacted the Medicare program, Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq. (1982), to provide a comprehensive system of health care for the elderly and infirm.[1] Under Part A of the program,[2] Medicare provides payments to qualified hospitals to reimburse them for medical care provided to Medicare beneficiaries. A hospital may participate in the Medicare program as a "provider of services" by entering into a "provider agreement" with the Secretary of Health and Human Services (the "Secretary"). Id. § 1395x(e), (u). The provider (i.e., the hospital) is entitled to payment of the lesser of the "reasonable cost" or the "customary charges" of hospital services provided to Medicare beneficiaries. Id. § 1395f(b)(1).[3] A provider receives its Medicare reimbursements directly from the Secretary or, more commonly, through a "fiscal intermediary" appointed by the provider. The fiscal intermediary, usually a private insurance company, acts as an agent of the Secretary for the purpose of reviewing the provider's claim for reimbursement. Id. § 1395h.

The process by which the final amount of reimbursement is determined is quite complex. The payment process begins when the provider files, at the end of each "cost year," a cost report with its fiscal intermediary. 42 C.F.R. § 405.406(b) (1985). This report sets forth the costs of all services provided to Medicare patients during the year. The fiscal intermediary analyzes and

---

* Honorable Damon J. Keith, U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

1. This review of the Medicare procedures is drawn in large part from Judge Young's concise summary of the reimbursement scheme in *St. Luke's Hospital v. Secretary of Health and Human Services,* 632 F.Supp. 1387 (D.Mass.1986), *aff'd in part, rev'd in part and vacated,* 810 F.2d 325 (1st Cir.1987). For a detailed explanation of the 1979 malpractice regulations, see *Lloyd Noland Hospital and Clinic v. Heckler,* 762 F.2d 1561 (11th Cir.1985).

2. The Medicare Act is divided into three parts. At issue in this case is Part A, codified at 42 U.S.C. §§ 1395c to 1395i–2, which provides insurance for hospitalization and medical care for the elderly and disabled. Part B, codified at 42

U.S.C. §§ 1395j to 1395w, provides voluntary insurance for supplemental medical care for qualified recipients. Part C, 42 U.S.C. §§ 1395x to 1395xx, includes miscellaneous provisions applicable to Parts A and B.

3. Because of certain 1983 amendments to the Social Security Act, the "reasonable cost" reimbursement scheme has been largely phased out. 42 U.S.C.A. § 1395ww (West 1986). Since October, 1, 1986, only a small number of the hospitals in the country use the reimbursement scheme described here. Id. § 1395ww(d)(1)(B). For a description of the new payment plan, see *Charter Medical Corp. v. Bowen,* 788 F.2d 728, 730–31 (11th Cir.1986). *See also Washington Hospital Center v. Bowen,* 795 F.2d 139, 141–42 (D.C.Cir.1986) (contrasting both reimbursement schemes).

audits the cost report, and issues a Notice of Program Reimbursement ("NPR"), which sets forth the amount of reimbursement to which the intermediary believes the provider is entitled. This NPR reflects any costs claimed by the provider but disallowed by the intermediary. *Id.* § 405.1803. If the provider is dissatisfied with the fiscal intermediary's determination (and if certain jurisdictional requirements are met), it may appeal the determination to the Provider Reimbursement Review Board (the "PRRB"). 42 U.S.C. § 1395oo(a). The PRRB has the power to affirm, reverse, or modify a determination made by a fiscal intermediary. *Id.* § 1395oo(d). Within 60 days after a final decision of the PRRB, the Secretary may review, on his own motion or at the request of the provider, the decision of the PRRB. *Id.* § 1395oo(f)(1). A provider dissatisfied with a final decision of the PRRB or Secretary may seek review of the decision in the federal district court in which the provider is located, or in the District Court for the District of Columbia. *Id.* The district court's review is made in accordance with the Administrative Procedure Act, and is based on the administrative record. 5 U.S.C. § 706 (1982).

The exact language of certain subsections of 42 U.S.C. § 1395oo, which establishes and controls the PRRB, is highly relevant to portions of this appeal. In order to appeal to the PRRB, a provider must meet certain deadlines and minimum amount-in-controversy requirements:

Any provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by [the PRRB] ... if—

(1) such provider—

(A)(i) is dissatisfied with a final determination of the organization serving as its fiscal intermediary ... as to the amount of total program reimbursement due the provider for the items and services furnished to individuals for which payment may be made under this subchapter for the period covered by such report, ...

. . . .

(2) the amount in controversy is $10,-000 or more, and

(3) such provider files a request for a hearing within 180 days after notice of the intermediary's [or Secretary's] final determination. . . .

*Id.* § 1395oo(a).[4] On appeal, the provider can present evidence and witnesses at a hearing before the PRRB.

A decision by the [PRRB] shall be based upon the record made at such hearing, which shall include the evidence considered by the intermediary and such other evidence as may be obtained or received by the [PRRB] and shall be supported by substantial evidence when the record is viewed as a whole. The [PRRB] shall have the power to affirm, modify, or reverse a final determination of the fiscal intermediary with respect to a cost report and to make any other revisions on matters covered by such cost report (including revisions adverse to the provider of services) even though such matters were not considered by the intermediary in making such final determination.

*Id.* § 1395oo(d). After decision by the PRRB, there are two bases for appeal to a district court:

Providers shall have the right to obtain judicial review of any final decision of the [PRRB], or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the [PRRB] or of any reversal, affirmance, or modification by the Secretary is received. Providers shall also have the right to obtain judicial review of any action of the fiscal intermediary which involves a question of law

---

**4.** A group of providers can appeal to the PRRB together even if each individual provider does not have over $10,000 at issue, so long as the group appeal as a whole puts at least $50,000 into controversy. 42 U.S.C. § 1395oo(b). This case represents the appeals of three groups of hospitals, each of which easily meets the $50,-000 requirement; most hospitals in the groups would meet the $10,000 requirement for individual appeals.

or regulations relevant to the matters in controversy whenever the [PRRB] determines (on its own motion or at the request of a provider of services as described in the following sentence) that it is without authority to decide the question, by a civil action commenced within sixty days of the date on which notification of such determination is received. *Id.* § 1395oo(f)(1).[5]

## B. *Medical Malpractice Insurance Under Medicare*

Since its inception, the Medicare program reimbursed hospitals and other providers according to the amount the facilities were used by Medicare patients. Under the accounting procedures used, costs are grouped into cost categories. Medical malpractice insurance, along with other administrative and insurance expenses, was grouped under the General and Administrative cost category. These "G & A" costs were allocated to a "cost center" within the hospital, such as the emergency room. Medicare reimbursed the hospital for a portion of each cost center's G & A costs, based on the Medicare patient utilization rate for that center. Ultimately, in very simple terms, a hospital in which 40% of the patients were Medicare beneficiaries was reimbursed for 40% of its malpractice insurance premiums.

In 1979, in response to the increased cost of malpractice insurance, the Secretary promulgated a new regulation which removed malpractice insurance from the G & A cost reimbursement scheme. 44 Fed. Reg. 31641–42, *codified at* 42 C.F.R. § 405.452(b)(1)(ii), *recodified to* 42 C.F.R. § 405.452(a)(1)(ii). Under the 1979 scheme, if a hospital had actually paid any malpractice claims over the preceding five years, it would be reimbursed for insurance premiums by the percentage of those claims that were paid to Medicare patients. If a hospital had not paid any malpractice claims in the preceding five years, the hospital would be reimbursed for insurance premiums based on an average national figure set at 5.1%. Thus, a hospital with 40% Medicare patients might be reimbursed for only 5.1% of its malpractice costs.[6]

Soon after the promulgation of the 1979 regulation, hospital associations around the country, representing over 6,000 hospitals (including those in the case now before this court), joined in a direct challenge to the new regulations, arguing that, among other problems, the regulations were not issued in conformity with the requirements of the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 (1982). The Secretary raised jurisdictional objections, and the Tenth Circuit dismissed the suit based on 42 U.S.C. § 405(h), which bars general federal question jurisdiction in actions against the Secretary to recover on any claim arising under the Social Security Act. *Hadley Memorial Hospital v. Schweiker,* 689 F.2d 905 (10th Cir.1982). The Tenth Circuit held that the hospitals, to challenge the regulation, would have to go through the administrative appeals process set out in the Medicare statutes, and, after final decision by the PRRB, the hospitals could bring suit in the district courts in which they were located. *Id.* at 910.

After the *Hadley* decision, hospitals all across the country exhausted their administrative appeals, and brought suits challenging the 1979 regulation; numerous lawsuits, many involving groups of hospitals, were filed and began filtering their way through the federal courts. Over the past few years, at least eight circuit courts and many district courts have invalidated the

---

**5.** The full text of subsection (f)(1) is reproduced, with amendments indicated, in Appendix I of this opinion.

**6.** In *Lloyd Noland Hospital and Clinic v. Heckler,* 762 F.2d 1561 (11th Cir.1985), for example, one hospital had 32% Medicare patients and the other had 42%. Because of their malpractice claim history, both were reimbursed at the national rate of 5.1%. This made a difference of over $13,000 for the first hospital, and over $10,000 for the second. *Id.* at 1564. In this case, the amounts in controversy range from a few thousand dollars to over one hundred thousand dollars; the Baptist Hospital of Miami, for instance, is seeking additional reimbursement of $103,569. Appendix A, Complaint, *Baptist Hospital of Miami v. Heckler,* 614 F.Supp. 564 (S.D.Fla.1984).

1979 regulation, while no court in the country has upheld the rule.[7]

A number of cases, including the three consolidated into this appeal, were filed in this circuit challenging the 1979 rule. In June of 1985, the circuit addressed and resolved the question in the first case that reached it, *Lloyd Noland Hospital and Clinic v. Heckler*, 762 F.2d 1561 (11th Cir. 1985). In *Lloyd Noland*, the court invalidated the rule as in violation of the Administrative Procedures Act ("APA"), 5 U.S.C. § 500. The court found that the Secretary had promulgated the rule with insufficient response to comments and criticisms, *see id.* § 553(c), and the Secretary had arbitrarily and capriciously relied on faulty data, *see id.* § 706(2)(A). In considering the proper remedy, this court wrote:

> The Secretary has asked that we direct the district court to remand to her for further rulemaking should we invalidate this rule. We decline.
>
> Both district courts invalidated the malpractice rule. The effect was to reinstate the prior method of reimbursement.... The only proper result is to pay the hospital according to existing regulations.

The hospitals seek reimbursement for the fiscal year 1979–80. Four years is long enough for them to wait.

762 F.2d at 1569 (citations omitted). This court remanded to the PRRB for payment of the hospitals' insurance costs under the pre–1979 reimbursement rule. The Secretary petitioned for reconsideration and rehearing en banc; that petition was denied on January 15, 1986. The plaintiff hospitals in *Lloyd Noland* have received payment under the pre–1979 rules.[8]

## C. Administrative Filings and Appeals

All thirty-five hospitals involved in this consolidated appeal filed, at the appropriate time, cost reports with their fiscal intermediaries, claiming reimbursement for the cost of services provided to Medicare beneficiaries. Thirty of the hospitals claimed in their cost reports reimbursement for malpractice insurance costs using the pre–1979 rule. These hospitals, in simple terms, ignored the 1979 rule and filled out cost reports as if it did not exist. For these thirty hospitals, their fiscal intermediaries "disallowed" reimbursement under the pre–1979 rule. The fiscal intermediaries issued Notices of Program Reimbursement ("NPRs") reflecting the adjusted total reimbursements. The thirty hospitals

7. *See, e.g., Cumberland Medical Center v. Secretary of Health and Human Services*, 781 F.2d 536 (6th Cir.1986); *Bedford County Memorial Hospital v. Health and Human Services*, 769 F.2d 1017 (4th Cir.1985); *Menorah Medical Center v. Heckler*, 768 F.2d 292 (8th Cir.1985); *DeSoto General Hospital v. Heckler*, 766 F.2d 182 (5th Cir.), *modified*, 776 F.2d 115 (5th Cir.1985); *Lloyd Noland Hospital and Clinic v. Heckler*, 762 F.2d 1561 (11th Cir.1985); *St. James Hospital v. Heckler*, 760 F.2d 1460 (7th Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 229, 88 L.Ed.2d 228 (1985); *Humana of Aurora, Inc. v. Heckler*, 753 F.2d 1579 (10th Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 180, 88 L.Ed.2d 149 (1985); *Abington Memorial Hospital v. Heckler*, 750 F.2d 242 (3d Cir.1984), *cert. denied,* — U.S. ——, 106 S.Ct. 180, 88 L.Ed.2d 149 (1985); *Walter O. Boswell Memorial Hospital v. Heckler*, 628 F.Supp. 1121 (D.D.C.1985); *Albany General Hospital v. Heckler*, 584 F.Supp. 614 (D.Ore.1984), *appeal stayed pending disposition of above referenced petitions to Supreme Court for certiorari*, No. 84–3865 (9th Cir. Aug. 5, 1985), *remanded without opinion*, 796 F.2d 478 (9th Cir.1986); *St. Joseph's Hospital v. Heckler*, 583 F.Supp. 1545 (D.Ariz. 1984), *appeal stayed pending disposition of*

*above referenced petitions to Supreme Court for certiorari*, No. 84–2168 (9th Cir. August 5, 1985), *remanded without opinion*, 796 F.2d 479 (9th Cir.1986).

8. Since the *Lloyd Noland* case, this court has decided one other case involving the malpractice insurance regulations, *Charter Medical Corp. v. Bowen*, 788 F.2d 728 (11th Cir.1986). In that case, the district court ordered the Secretary to pay the plaintiff hospitals under the pre–1979 rule for cost years that had past *and* one cost year that was upcoming; the Secretary only appealed the prospective grant of relief for the upcoming cost year. *Id.* at 730 n. 1. On appeal, this court rejected the district court's order of prospective relief for a hospital, because the PRRB had not yet issued a final decision for that cost year. The court explicitly based its holding on the concession by the Secretary that the hospitals would later be able to receive relief *after* the PRRB had issued its initial ruling on the as yet undecided cost year. *Id.* at 735. In other words, the district court did not have the power to award relief from a cost determination that had not yet been finalized within the administrative review process.

each appealed to the PRRB; these appeals were consolidated into the Florida Hospital Association Group Appeal before the PRRB. At the request of the hospitals, the PRRB certified for expedited judicial review the question of the validity of the 1979 rule.

Five other hospitals, however, followed a different path.[9] Instead of ignoring the 1979 rule and claiming reimbursement under the pre–1979 rule, those five hospitals filled out their cost reports using the then current 1979 reimbursement rule; these hospitals, unlike the thirty other hospitals, followed the 1979 rule as promulgated and "*self*-disallowed" the medical malpractice costs.[10] Because they did not file under the pre–1979 rule (in other words, because they filed a "correct" report under the then current regulations), their fiscal intermediaries did not need to adjust their cost reports downward to bring them into conformity with the 1979 rule. Thus, the NPRs for these five hospitals did not reflect any adjustments or denials of claims. After receiving their NPRs, these five hospitals timely appealed to the PRRB, challenging the 1979 rule; their appeals were consolidated into the Florida Group Appeal. When the PRRB certified the question of the validity of the rule for judicial review, however, the PRRB declined to accept jurisdiction over the appeals of the five hospitals that applied the 1979 rule, because the pre–1979 rule claims "were not claimed on the hospitals' cost reports ... nor had the NPR included any denials or adjustments

of costs related to these issues." Appellant's Brief at 10. Notwithstanding the fact that the cost reports did include all of the information needed to make the pre–1979 calculations, the PRRB stated that "a provider must have made an overt disclosure (notice) of its posture on a particular issue which ordinarily would be evidenced by claiming reimbursement for the particular item on the cost report." *Id.* Thus, for the self-disallowing hospitals, the PRRB refused jurisdiction; because of this, the Secretary argues, the federal courts have no jurisdiction over the claims of the five self-disallowing hospitals.

### D. *Litigation in the District Courts*

Because of the venue and timing requirements in the Medicare statute, 42 U.S.C. § 1395oo(f)(1), the thirty-five hospitals could not bring one consolidated case into a single district court. Three suits were filed, *Tallahassee Memorial Regional Medical Center v. Heckler* in the Northern District of Florida, and *Baptist Hospital of Miami v. Heckler* and *Parkway Medical Center v. Heckler* in the Southern District of Florida. The latter two cases were consolidated at the district court level. In both litigations, initiated well before this circuit's decision in *Lloyd Noland,* the Secretary defended the 1979 rule as valid, and also argued that the district courts did not have jurisdiction over the claims of the five self-disallowing hospitals.[11]

In the *Baptist Hospital* case, on September 24, 1984, the district court denied the

---

**9.** Three of the hospitals (Santa Rosa Hospital, Jackson County Hospital, and Shands Teaching Hospital and Clinic) were originally plaintiffs in the *Tallahassee Memorial Regional Medical Center v. Heckler* case filed in the Northern District of Florida. Two hospitals (Mercy Hospital and Abbey Hospital and Medical Center) were plaintiffs in *Baptist Hospital of Miami v. Heckler,* filed in the Southern District of Florida. None of the plaintiffs in the *Parkway Medical Center v. Heckler* case, consolidated at the district court level with *Baptist Hospital,* fall into this category of "self-disallowing" hospitals. Mercy Hospital is seeking reimbursement for the 1981 cost year. The other four self disallowing hospitals are seeking reimbursement for the 1980 cost year. At issue for the five hospitals combined is a total of over $130,000. *See* Appendix B, Complaint, *Baptist Hospital.*

**10.** The concept, and term, of "self-disallowance" is not found in the Medicare statutes or regulations. It is, however, commonly used (at least by the hospitals and in the case law) to describe Medicare providers who applied the 1979 rule in their cost reports, rather than claiming reimbursement under the pre–1979 rule and therefore forcing their fiscal intermediaries to disallow their claims. For lack of a better term, we will use it to refer to this group of hospitals.

Among other things, self-disallowing hospitals argue that to claim reimbursement under the pre–1979 regulations would have put them in risk of criminal penalties for fraud under the Medicare statutes. *See* 42 U.S.C. § 1395nn.

**11.** In both litigations, the Secretary also claimed that the 60–day period following agency action within which a Medicare provider could file a

Secretary's motion to dismiss the self-disallowing hospitals and granted the plaintiffs' motions for summary judgment. In holding that the district court did have jurisdiction over the claims of the self-disallowing hospitals, the district court ruled that the claimed malpractice insurance costs were "contained" in the cost reports, and thus the PRRB (and therefore the district court) had jurisdiction. In granting the plaintiffs' motions for summary judgment, the court ruled that the Secretary's basis and purpose statement was inadequate under the Administrative Procedures Act, that the 1979 rule was arbitrary and capricious, and that the rule violates the Medicare statute itself. The district court remanded the matter to the Secretary "for further consideration in accordance with [the court's] opinion."

This court issued its *Lloyd Noland* decision on June 12, 1985. On June 20, 1985, in the *Tallahassee Memorial* case, the district court rejected the Secretary's motion to dismiss the claims of the self-disallowing hospitals, relying on the district court opinion in *Baptist Hospital*. The court also struck down the 1979 rule, relying on the binding authority of the *Lloyd Noland* case. In a final judgment entered on August 29, 1985, the court remanded the case to the PRRB "for payment of the plaintiff hospitals' malpractice insurance costs pursuant to the [pre–1979 rule] without reference to the [1979 rule]."

E. *Litigation in this Court*

██ Following the district court's decision in *Baptist Hospital* case (finalized 11 months before *Tallahassee Memorial*), the Secretary appealed to this court.[12] Prior to the setting of the briefing schedule, this court issued its opinion in the *Lloyd Noland* case. The Secretary timely filed for reconsideration and rehearing in the *Lloyd Noland* case. The Secretary then filed in the *Baptist Hospital* case a motion to hold the appeal in abeyance pending resolution of the *Lloyd Noland* petition for reconsideration. In the *Baptist Hospital* motion, the Secretary wrote that the appeal "presents the identical issue already decided by the Court in the *Lloyd Noland* case." Appellant's Motion to Hold This Appeal in Abeyance Pending Decision in Another Case at 1. Arguing that judicial economy would be best served, the Secretary summarized the issues in *Baptist Hospital:*

> While [this case] involves a jurisdiction issue not present in *Lloyd Noland,* that issue—which concerns the right to obtain review of the validity of the regulation without raising the issue in cost reports filed with the intermediary—goes only to two hospitals. Thus, whatever the outcome of *Lloyd Noland,* it will be dispositive as to all but two hospitals in the instant appeal, and even the jurisdictional issue will be mooted as to the two hospitals if the Court disposes of the case on rehearing in the Secretary's favor.

*Id.* at 2. The motion was granted on August 14, 1985.

In the petition for rehearing in the *Lloyd Noland* case, the Secretary informed this court that, five days after the issuance of

suit in district court was a jurisdictional limitation, instead of a simple statute of limitations. Both courts below rejected this argument and, given the facts of the cases, found subject matter jurisdiction. This question was settled by this court in *Lloyd Noland,* which held the period to be a statute of limitations. 762 F.2d at 1564. The Secretary has not attempted to reargue this issue in this appeal.

12. Soon after the papers in the *Baptist Hospital* case were filed with this court, the court *sua sponte* raised the jurisdictional question of whether the district court's order remanding the case to the Secretary for further consideration constituted a final appealable order under 28

U.S.C. § 1291 (1982). The parties submitted memoranda on the question, all arguing that the order was final and thus this court did have jurisdiction. By its order dated July 29, 1985, this court carried the question with the case, to be decided by the oral argument panel.

After reviewing the record in the case, we find that the order was final, and thus appealable. The only appropriate action the Secretary could have taken on remand was to pay the plaintiff hospitals under the pre–1979 malpractice rule. Thus, as far as the district court was concerned, the litigation of the merits was completed. Our finding of jurisdiction is supported by the opinion in *Lloyd Noland,* which involved a similar district court order.

the *Lloyd Noland* opinion, the Secretary published a notice of proposed rulemaking, proposing a new malpractice insurance regulation that would be retroactive to the date of promulgation of the invalidated 1979 rule. *See* Appellant's Petition for Panel Rehearing, *Lloyd Noland*. The Secretary argued that the new rule, when finalized, would moot the claims of the plaintiffs in *Lloyd Noland*. The Secretary asked the *Lloyd Noland* panel to vacate its order requiring payment under the pre–1979 rule, and to remand the case to the Secretary for further proceedings. *Id.* at 4. The court rejected the request for a remand and denied the Secretary's petition for rehearing on January 15, 1986. The Secretary did not petition the Supreme Court for a writ of certiorari.

By the time the *Lloyd Noland* rehearing petition was denied (thereby ending the period that *Baptist Hospital* was held in abeyance), the Secretary's appeal of the district court's decision in the *Tallahassee Memorial* case had reached this court. The plaintiffs/appellees in both cases filed motions for summary action in favor of most of the hospitals, based on the *Lloyd Noland* opinion; the motions argued that, except for the self-disallowing hospitals, *Lloyd Noland* completely controlled the disposition of the cases. Without directly stating any opposition to summary action for the *non*-self-disallowing hospitals, the Secretary responded to the motions by stating that summary action was inappropriate for the self-disallowing hospitals, a point the appellees had conceded in their motions. A panel of this court denied the motions for summary action.

At that same time, the Secretary moved to consolidate the appeals in the two cases, *Baptist Hospital* and *Tallahassee Memorial Regional Medical Center*. The Secretary argued that the two cases "involve virtually identical challenges to the same Medicare reimbursement regulation and in both cases the district courts ruled against the Secretary on a jurisdictional issue pertinent only to some of the plaintiffs in each case. Consolidation of the cases will therefore serve the goal of judicial economy." Motion of Appellant for Consolidation of

Cases and for New Briefing Schedule at 1–2. That motion was granted on March 4, 1986.

On March 20, 1986, the Secretary filed his initial brief as appellant. The only "Issue Presented" was "[w]hether the two District Courts erred when they held that the Provider Reimbursement Review Board must accept jurisdiction over costs that a Medicare provider failed to claim or otherwise disclose on its cost report." Appellant's Brief at 2. In the Statement of the Case, the brief included a footnote:

> This Court held the malpractice rule invalid in *Lloyd Noland Hospital and Clinic v. Heckler*, 762 F.2d 1561 (11th Cir.1985), *reh. denied*, No. 84–7444 (January 15, 1986). On June 17, 1985 (50 *Fed.Reg.* 25178), the Secretary published a Notice of Proposed Rulemaking to replace the malpractice rule with a new regulation effective for cost reporting periods beginning on or after July 1, 1979. This Court denied the Secretary's petition for rehearing in which the government contended that the appropriate remedy in *Lloyd Noland* was a remand to the agency for application of the new rule promulgated pursuant to the NPRM. While defendant continues to believe that the Court should refrain from ordering payment under the pre–1979 regulations, he acknowledges that *Lloyd Noland* is controlling as to the validity of the current malpractice rule, in that the new malpractice rule has not yet been published as a final regulation. (*See* Response of Appellant to Appellees' Motion For Summary Action). Defendant incorporates by reference all his arguments in *Lloyd Noland* in these appeals, and he will notify the Court as soon as a new rule is issued.

*Id.* at 4 n. 1. The hospitals filed their Brief for Appellees on May 1, 1986; that brief responded only to the single "Issue Presented" in the Secretary's initial brief.

Then, in his reply brief filed May 19th, the Secretary informed this court that he had, on April 1, 1986, promulgated a new malpractice insurance reimbursement rule

retroactive to 1979. 51 Fed.Reg. 11142 (Apr. 1, 1986).[13] The new rule applies only to those hospitals that still have "open" cost reports, i.e., generally those hospitals that have appealed the 1979 rule to the PRRB and to the courts and that have not received a "final" judgment from the PRRB or courts. *Id.* at 11149. In other words, the new rule applies to hospitals that are still in litigation over the 1979 rule. All hospitals (such as those in *Lloyd Noland*) that have received final court judgments are not covered by the new rule.

The Secretary, in the reply brief, argues that the new rule makes this entire case moot, and therefore deprives this court of jurisdiction. Bound in with the reply brief was the Secretary's "Suggestion of Mootness and Motion to Vacate the Two District Court Judgments from which these Consolidated Appeals were Taken and to Remand these Cases to the District Courts with Instructions to Dismiss." [14]

■ The Secretary's reply brief prompted a flurry of filings and motions in this court,[15] starting with the appellee hospitals'

---

**13.** The new regulation was originally designated as 42 C.F.R. § 405.457. Since then, the regulation has been redesignated as 42 C.F.R. § 413.56 in a reorganization of the Medicare regulations unrelated to this litigation.

In *very* simple terms, the 1986 regulation is a combination of the 1979 and pre–1979 approaches, although more heavily weighted in favor of the 1979 rule. Under the pre–1979 rules, medical malpractice insurance costs were reimbursed according to the percentage of Medicare patient utilization of the medical facility. The 1979 rules reimbursed the cost in proportion to the amount actually recovered by Medicare patients in malpractice claims. The 1986 rule, simply described, reimburses the providers for an administrative component of the insurance costs according to patient utilization (similar to the pre–1979 rules). The administrative component is 8.5% of the total insurance costs. The remaining 91.5% of the malpractice insurance costs are reimbursed using a formula geared to a national ratio of Medicare recovery similar to the 1979 rule.

We will not consider extensively the administrative rulemaking record underlying the 1986 rule, as the validity of that rule is not properly before this court in this case. Nevertheless, the Secretary submitted the Federal Register section in which the new rule was promulgated as an appendix to his reply brief, in support of his motion to dismiss the case as moot. The content of the Federal Register is therefore properly before this court, and will be considered in this opinion.

**14.** In another case before this court, *Charter Medical Corp. v. Bowen*, 788 F.2d 728 (11th Cir.1986), decided five days after the new 1986 rule became final, the Secretary raised in his Petition for Panel Rehearing this exact same challenge to the court's jurisdiction, because (as the Secretary argued) the new regulation made the case moot. On July 8, 1986, the *Charter Medical* panel rejected the Secretary's claim of mootness and lack of jurisdiction, and denied the petition for rehearing with no opinion.

Normally a summary denial of a petition for rehearing would not carry precedential weight. The Secretary's petition for rehearing, however, raised a jurisdictional challenge, and Fed.R. Civ.P. 12(h)(3) does not allow a court to ignore a jurisdictional issue: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court *shall* dismiss the action." (emphasis added). *See, e.g., Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572, 100 S.Ct. 800, 63 L.Ed.2d 36 (1980) (reaching and rejecting jurisdictional challenge raised in footnote in petition for rehearing); *Goodwin v. United States*, 602 F.2d 107 (6th Cir.1979) (remanding to district court for determination of facts relevant to jurisdictional issue raised in petition for rehearing in the circuit court); *Kelly v. Hartford Accident and Indemnity Co.*, 294 F.2d 400, 409 (5th Cir. 1961) (reaching and rejecting jurisdictional challenge raised in petition for rehearing), *cert. denied*, 368 U.S. 989, 82 S.Ct. 605, 7 L.Ed.2d 526 (1962); *see also North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971) ("the question of mootness is ... one which a federal court must resolve before it assumes jurisdiction").

In *In re Ghandtchi*, 705 F.2d 1315 (11th Cir. 1983), this court explicitly held that a case must be dismissed if it becomes moot between issuance of the panel opinion and disposition of a petition for rehearing. Thus, we assume that the *Charter Medical* panel reached and rejected the Secretary's jurisdictional challenge. Because we reach the same conclusion, however, we need not resolve the question of whether the *Charter Medical* case binds this panel.

**15.** The post-briefing filings by the parties in this case were very helpful, especially the supplemental authorities submitted to keep this court abreast of the progress of these issues in other courts around the country. The complexity of the filing, however, sometimes bordered on the absurd; one of the late filings was entitled "Appellees' Opposition to Appellant's Motion for Leave to File Brief in Reply to Appellees' Opposition to Appellant's Motion to Vacate."

motion to strike the Secretary's reply brief.[16] Most of the motions were carried with the case for resolution by the oral argument panel.[17] Argument in the case was finally heard on October 8, 1986.

### F. *Disposition of this Case*

■ Although raised at the end of the briefing in this case, the mootness and jurisdictional questions are nevertheless the threshold issues that we must confront. Prior to that discussion, however, it is necessary to recognize what may be obvious, that the district courts were correct in finding that the 1979 rule was promulgated in violation of the Administrative Procedures Act. The 1986 regulation and the Secretary's arguments notwithstanding, the *Lloyd Noland* case is binding precedent on that question. 762 F.2d at 1567–68.[18]

Because we find that the 1986 regulation does not moot this case and that the hospitals must be paid under the pre–1979 rules, we must then turn in Part III below to the question of the self-disallowing hospitals. Our analysis of the governing statutory language leads us to conclude that the PRRB should have taken jurisdiction over the claims of the five self-disallowing hospitals, and that they therefore should be paid using the pre–1979 methodology required for the rest of the hospitals.

## II. THE EFFECT OF THE NEW 1986 REGULATION ON THIS LITIGATION

We first turn to the Secretary's claim of mootness in light of the new regulation promulgated during the pendency of this appeal. As indicated above, the mootness inquiry is a threshold issue that applies to all thirty-five hospitals here as appellees. The 1986 regulation also raises thorny questions about the appropriate remedy (if the case is not moot). The district courts awarded payment to the hospitals using the pre–1979 rules, but the Secretary now argues that the hospitals should be paid using the 1986 rule.

The new rule was promulgated on April 1, 1986, with an effective date of May 1, 1986. 51 Fed.Reg. 11142 (Apr. 1, 1986). On May 19, 1986, the Secretary raised in

---

**16.** The hospitals argued that the Secretary's reply brief should be struck because it raised an issue not previously raised in the appeal. The Secretary responded that he had in fact preserved the issue in a footnote in his opening brief, quoted on pages 1444–1445, of this opinion. The Secretary also argued that the question of mootness, which goes to jurisdiction, can be raised at any time. The hospitals' motion to strike the reply brief was carried with the case.

It is well settled that a party cannot argue an issue in its reply brief that was not preserved in its initial brief. *See United States v. Oakley*, 744 F.2d 1553, 1556 (11th Cir.1984). In this case, the single footnote in the Secretary's initial brief did not sufficiently preserve the mootness issue. Thus, insofar as the Secretary's reply brief addressed the mootness question, the Appellees' motion to strike the brief is granted. Questions of jurisdiction, however, can appropriately be raised at any time in the litigation, and thus the struck portion of the reply brief shall be construed and accepted as a memorandum in support of a motion to vacate for lack of jurisdiction. A few of the post-briefing motions and papers could have been avoided had the Secretary simply not submitted his motion under the title "Reply Brief."

**17.** Following the promulgation of the new reimbursement rule, two appellee hospitals in this case filed motions for voluntary dismissal of their claims against the Secretary. The hospitals presumably are satisfied with their reimbursement under the new 1986 rule. A panel of this court, on June 27, 1986, carried the motion concerning Tarpon Springs General Hospital with the case. A different panel, on August 15, 1986, granted the motion for dismissal of Doctor's General Hospital. By separate order, the oral argument panel grants the motion to dismiss Tarpon Springs General Hospital. Thus, of the thirty-five original plaintiffs in these consolidated cases, thirty-three remain. Neither of the two dismissed hospitals were in the group of five self-disallowing hospitals.

Of the other motions carried with the case, the Appellees' motion for leave to file appendix with opposition to appellant's motion to vacate is hereby granted. The remaining motions, including the Secretary's motions to vacate and remand with instructions to dismiss, are denied by the effect of this opinion. The *Baptist Hospital* appellees filed a cross-notice of appeal but did not argue any issues in support thereof. As a result, the cross-appeal is dismissed.

**18.** As discussed below, the Secretary has argued that even this simple reaffirmance of *Lloyd Noland* is moot because of the new 1986 regulations. Because we find that the new regulations do not moot the entire controversy and do not control the relief granted in this case, however, it is still relevant and necessary to reaffirm the invalidity of the 1979 regulations.

his reply brief the question of mootness, arguing that the litigation was only a challenge to the 1979 rule, which is no longer the controlling regulation. The Secretary stated that the new regulation will "substantially benefit most Medicare providers." Appellant's Reply Brief at 4. This is true, however, only relative to the 1979 regulation; it is incorrect in relation to the pre–1979 rules.

According to the Secretary, the new 1986 rule is a combination of the 1979 rule (invalidated in *Lloyd Noland*) and the pre–1979 rule. *See* Appellant's Reply to Appellees' Opposition to Appellant's Motion to Vacate at 25; 51 Fed.Reg. at 11186; *see also supra* note 13 (explaining, in simple terms, mechanics of new rule). Under the new rule, a hospital with a 25% Medicare Patient utilization rate would receive reimbursement for 8.97% of its medical malpractice costs. This compares to 25% under the pre–1979 rule and, probably, 5.1% under the 1979 rule. Similarly, a hospital with a 50% Medicare utilization rate would receive 22.11% of its malpractice costs, instead of 50% (pre–1979) or probably 5.1% (1979). *See generally* 51 Fed.Reg. at 11189–90 (table of reimbursement percentages under new 1986 rule). We conclude that most, if not all, of the appellee hospitals would receive substantially less under the 1986 rule than under the pre–1979 regulation.[19]

The new regulation, promulgated in the wake of the consistent rejection of the 1979 rule by courts around the country, seems to be specifically aimed at short-circuiting on-going litigation challenging the Medicare reimbursement. By its own terms, the new regulation is retroactive to the 1979 cost years, *but only* for those hospitals that still have "open" cost reports, i.e., hospitals that appealed their cost reports to the PRRB (and then to the courts) but have yet to receive a "final determination."[20] Because the "reasonable cost" reimbursement scheme has been largely replaced, *see supra* note 3, the 1986 regulation has only limited prospective effect; only a small percentage of *future* Medicare reimbursement will be covered by the new rule. *See* 51 Fed.Reg. at 11186–87. For the affected cost reports, according to the Secretary, the fiscal intermediaries will "automatically calculate" reimbursement using the new rule, with no additional information being gathered from the hospitals. 51 Fed.Reg. at 11149.[21]

■ The 1986 rule presents some new and difficult questions for this court in this case. For the reasons stated below, we hold that this case is not moot. Because of this holding, we must then decide what the appropriate remedy should be. Without attempting to decide the validity of the 1986 regulation, we hold that it should not be applied to the claims of the litigants in this

19. In his reply brief, the Secretary suggests that it is "entirely possible that some, if not all, of the plaintiffs properly before the Court in these cases will be satisfied with their reimbursement under the new regulation, thus obviating the need for any further litigation of these claims." Appellant's Reply Brief at 4. Since the promulgation of the new rule, two of the plaintiffs before this court have requested that their claims be dismissed, presumably because either the 1986 rule satisfies them or the cost of litigation is greater than the possible gain when compared to the new rule. *See supra* note 17. The thirty-three other plaintiffs, however, have vigorously asserted their continued dissatisfaction with their reimbursement. Thus, it is obvious that the Secretary was wrong in his hope that the plaintiffs would be satisfied. It is equally obvious, as the Secretary acknowledges, that if this court does not address the claims in this case, these hospitals will continue to litigate

seeking reimbursement under the pre–1979 rule.

20. The new rule will also be applied, at the request of the hospital, to a cost report that is still within the period designated for reopening closed cost reports (i.e., three years from the closing of the report). *See* 51 Fed.Reg. at 11149.

21. The Secretary has explicitly stated, however, that the new rule will *not* apply to hospitals that self-disallowed malpractice costs under the 1979 rule. Appellant's Reply Brief at 3 n. 3. In other words, the five self-disallowing hospitals in this case would *not* receive the somewhat higher reimbursement (relative to the 1979 rule) the new rule affords. The Secretary argues that the five hospitals must be reimbursed under the 1979 rule, even though this court has declared that rule void.

**1448**

case, and they should be reimbursed under the pre–1979 regulations.[22]

### A. *Mootness*

This court is among the first to consider fully the mootness implications and retroactive effect of the 1986 regulation. In this case, we join the Sixth Circuit in rejecting the Secretary's mootness suggestion and in denying retroactive effect to the 1986 rule. *See Mason General Hospital v. Secretary of the Department of Health and Human Services*, 809 F.2d 1220 (6th Cir.1987).[23] The only other courts to have addressed the questions have responded differently as to the impact of the 1986 rule.[24] None of those courts, however, discussed their analysis in full.

The case or controversy requirement of the Constitution requires that moot cases be dismissed; in a moot case, there is no longer the vitality and interest among the parties that our adversary system of justice requires. As the Supreme Court has made clear, the "burden of demonstrating mootness 'is a heavy one.'" *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953)). In *County of Los An-*

*geles v. Davis*, the Supreme Court articulated a two part test for mootness:

"Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." We recognize that, as a general rule, "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." But jurisdiction, properly acquired, may abate if the case becomes moot because

(1) it can be said with assurance that "there is no reasonable expectation .." that the alleged violation will recur, and

(2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.

When both conditions are satisfied it may be said that the case is moot because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law.

440 U.S. at 631, 99 S.Ct. at 1383 (citations omitted).

■ Beyond this mootness test, there are also at least three exceptions to the mootness doctrine. "The first exception concerns a situation where the issues are

---

22. At the outset of this discussion, we acknowledge that the questions of mootness and retroactivity are inextricably intertwined. There are two possible approaches to these questions. We could first analyze and answer the question of retroactivity, and then based on a finding of non-retroactivity decide that the case is not moot. Because mootness is a *jurisdictional* question, however, that approach would be somewhat like putting the cart before the horse.

Instead, we consider the mootness question apart from the issue of retroactivity. To do so, we essentially assume *arguendo* that the 1986 regulation is properly retroactive, and then analyze the mootness question using generalized tests for mootness. Our later finding that the retroactive application of the 1986 rule is inappropriate in this case merely bolsters our holding rejecting the Secretary's mootness argument.

23. The Sixth Circuit did not specifically focus on the mootness question, but instead analyzed the retroactivity issue and, in rejecting retroactivity, implicitly rejected the suggestion of mootness. *See* 809 F.2d at 1223.

24. Three district courts have confronted the new rule, and have remanded the question of reimbursement to the Secretary. *See West Anaheim Community Hospital v. Bowen*, No. CV 84–4452 WDK (C.D.Calif. Oct. 29, 1986) (finding hospitals' challenge moot); *St. Paul Hospital v. Bowen*, 644 F.Supp. 99 (N.D.Tex.1986) (finding 1986 rule to be properly retroactive); *St. Louis University Medical Center v. Bowen*, 655 F.Supp. 72 (E.D.Mo.1986) (remanding for application of new rule). In an order having no precedential value under its local rules, the Second Circuit affirmed a district court's rejection of the 1979 rule, but remanded the case to the district court for "consideration of the validity of the 1986 Malpractice Rule and its effect, if any, on the remedy" or pre-1979 payment, as ordered by the district court. *Bethesda Community Hospital v. Bowen*, slip op. at 2 (2d Cir. June 18, 1986) [795 F.2d 1004, (table)]. One district court has rejected the Secretary's mootness argument. *See Miami General Hospital v. Bowen*, 652 F.Supp. 812 (S.D.Fla.1986).

capable of repetition, yet evading review." *B & B Chemical Co. v. United States Environmental Protection Agency*, 806 F.2d 987, 990 (11th Cir.1986).[25] With this test and exception to it in mind, we must consider the effect of the 1986 regulation on this litigation.[26]

25. The other two exceptions to the mootness doctrine, "where an appellant has taken all steps necessary to perfect the appeal and to preserve the status quo before the dispute becomes moot," and "where the trial court's order will have possible collateral legal consequences," *B & B Chemical Co.*, 806 F.2d at 990, are not applicable to our discussion. This case may in fact present an example of the first exception mentioned in this note, but in light of our disposition we need not decide that question.

26. Beyond this broad mootness discussion, the five self-disallowing hospitals present a separate mootness issue. Even if we were to find that the 1986 rule applies retroactively or otherwise moots the claims of the hospitals in general, the five self-disallowing hospitals would still have non-moot grounds for challenging the action of the PRRB in denying review of their claims.

Although the Secretary has explicitly stated that the 1986 rule will not apply to the self-disallowing hospitals, Appellant's Reply Brief at 3 n. 3, he still vigorously argues that their claims are moot. *See* Appellants' Reply to Appellees' Opposition to Appellant's Motion to Vacate at 12–13. Essentially, according to the Secretary, the self-disallowing hospitals must accept reimbursement under the 1979 rule, as if they had never challenged it.

Because, according to the Secretary, the 1986 rule does not alter the position of the self-disallowing hospitals, it is clear that "interim relief or events" have *not* "completely and irrevocably eradicated the effects of the alleged violation," *County of Los Angeles*, 440 U.S. at 631, 99 S.Ct. at 1383.

Even if, *arguendo*, we were to accept the Secretary's contention that the 1986 rule moots the primary claims of all of the hospitals in this case, we would still find that the claims of the self-disallowing hospitals are *not* moot. In arguing about the self-disallowing hospitals, the Secretary misconstrues and ignores the distinct nature of their two claims. Their claims are: (1) they challenge, along with the rest of the hospitals, the reimbursement they received during the relevant cost years, and argue that they should receive reimbursement under the pre-1979 rule; and (2) they challenge the decision of the PRRB that it did not have jurisdiction over their claims. While the 1986 rule may, *arguendo*, moot the first claim, it does not at all affect the second claim. The second claim is a challenge to a specific action by the PRRB, and cannot be mooted unless all ramifications of that action are erased. In this case, unlike with the remainder of the hospitals, the five self-dis-

### 1. Claims of the Appellee Hospitals

■ The Secretary argues that the hospitals were only challenging the 1979 rule, and now that the 1979 rule is no longer the current, controlling rule, the hospitals no longer have any claims in this litigation.[27] The hospitals, however, have from the out-

allowing hospitals would *not* get the "benefit" of the 1986 rule. Even if all the hospitals were to lose on their primary goal of pre–1979 rule reimbursement, the five self-disallowing hospitals can still be heard in court about their right to be treated the same as the other hospitals (i.e., their right to 1986 rule reimbursement).

Thus, the 1986 rule has no effect on and is irrelevant to the challenge by the five self-disallowing hospitals to the PRRB's decision that it lacked jurisdiction. We therefore hold that this court has jurisdiction over this claim of the five hospitals, and (in light of our holding in Part III below) that the hospitals must receive reimbursement calculated with the same formula as used for the remaining hospitals in this litigation. In other words, if we find that the pre–1979 rule should govern the cost reports of the remainder of the hospitals, the five hospitals should receive reimbursement under that rule. If, on the other hand, we were to find that the 1986 rule applies, the five self-disallowing hospitals should have their costs calculated using that method, and *not* the invalidated 1979 rule (as the Secretary proposes).

27. Although subsumed in his argument on mootness, the Secretary also makes a subtle statutory (but non-mootness) challenge to this court's jurisdiction. The Secretary argues that, under 42 U.S.C. § 1395oo, the federal courts have jurisdiction only over issues specifically and explicitly certified by the PRRB. The federal courts cannot, of course, take jurisdiction over an action by a hospital without either a final decision by the PRRB (or the Secretary if he or she modified the decision of the PRRB) or a determination by the PRRB that it lacks authority to decide a question. The plain language of the statute, however, does not include any such limitations on the power of the federal courts to fashion appropriate remedies in cases over which they have proper jurisdiction. Section 1395oo(f)(1) defines the requirements to obtain judicial review, but does not create limitations on such review. In light of Congress' concern for efficient judicial review of challenges to regulations, as seen in the legislative history of § 1395oo, *see infra* at 43–47, we will not read the statute so as to require, in a case such as this, that a hospital litigate for years to challenge a regulation and then need to litigate for years more about a remedy.

set sought a judgment not only invalidating the 1979 rule but also requiring payment under the pre–1979 rules.[28] In his initial brief, the Secretary did not question the hospitals' interest in reimbursement under the pre–1979 rule. The 1986 rule does not eliminate the hospitals' continuing interest in pre–1979 reimbursement. And finally, it is undisputed that for the vast majority of hospitals in this case, the 1986 rule would not "completely and irrevocably eradicate" the reduction in reimbursement effected by the 1979 rule.[29]

A review of cases dealing with mootness supports a rejection of the Secretary's mootness arguments. The 1986 rule does in fact provide to most hospitals a higher reimbursement than permitted under the 1979 rule, but it is nevertheless lower than under the pre–1979 rule. A number of Supreme Court and appellate cases reveal how sensitive is the requirement that the intervening event provide complete relief to the plaintiffs in a litigation. In two election cases decided on the same day, for example, the Court found one case moot and rejected mootness in another. In *Hall v. Beals*, 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969), the Court dismissed as moot a case challenging a six-month residency requirement for voting. Prior to decision by the Court, the state legislature changed the requirement to two months; because all of the plaintiffs, at the time of the start of the litigation, would have been able to vote under the new rule, the case was moot.[30] On the other hand, in *Brockington v. Rhodes*, 396 U.S. 41, 90 S.Ct. 206, 24 L.Ed.2d 209 (1969), the Court found that

an intervening reduction of a signature requirement (to get on a ballot) from 7% to 4% of registered voters did not moot the case where the plaintiff would not have met the new requirement either.

This case is unlike that in *Richardson v. Wright*, 405 U.S. 208, 92 S.Ct. 788, 31 L.Ed.2d 151 (1972), where the Court remanded the case to the Secretary of Health, Education and Welfare. The plaintiffs in that case had had their disability benefits suspended without notice or opportunity to present evidence to defend benefits. Prior to oral argument, the Secretary adopted a new regulation which provided all of the requested pre-suspension process *except* an opportunity for an oral presentation. While not finding the case to be moot, the Court withheld judicial action pending application of the new regulation. The Court reasoned that the additional process for the individual plaintiffs may provide the claimants with all of the process to which they were entitled, and so the Court could avoid the question of the oral presentation. In *Richardson*, it was possible that on remand the new procedures would fully satisfy the plaintiff's substantive claims. In this case now before this court, however, there is no mystery about what would happen on a remand to the Secretary—the Secretary has made it quite clear that the 1986 rule would be applied and that the hospitals would receive less than under the pre–1979 rule. Because we cannot hope to avoid the difficult legal issues presented in this case, as the Supreme Court did in *Richardson*, the *Richardson* case does not suggest to us a finding of mootness.[31]

**28.** The plaintiff hospitals in each of the three complaints filed in the district courts below made clear their claim for pre–1979 rule reimbursement. *See* Complaint at 33, *Tallahassee Memorial Regional Medical Center v. Heckler;* Complaint at 35, *Baptist Hospital of Miami v. Heckler;* Complaint at 15, *Parkway Regional Medical Center v. Heckler.*

**29.** This discussion does not presuppose a rejection of retroactivity for the 1986 rule; it simply holds that the hospitals have enough of a continuing interest in their claims to get over the mootness hurdle. Although we later reject retroactivity, *see infra* at 1453–1457, it would not be inconsistent to reject mootness yet still uphold retroactivity.

**30.** Also relevant was the fact that in *Hall* the problem was unlikely to re-occur. The issue of a repeating problem evading review is discussed in the next section.

**31.** *Relf v. Weinberger,* 565 F.2d 722 (D.C.Cir. 1977), also does not suggest a finding of mootness. In that case, the district court had imposed certain restrictions on the financing of human sterilizations by the Department of Health, Education and Welfare. During the litigation, the Department implemented new regulations that were *more* restrictive than those imposed by the district court. In light of the substantive content of the new regulations, and the fact that one of the two sets of plaintiffs

In a case analogous to this one, the Sixth Circuit rejected a suggestion of mootness in, coincidentally, a Medicare case where the Secretary of Health, Education and Welfare argued that intervening amendments to the Social Security Act fully satisfied the plaintiffs' concerns. *See Himmler v. Califano*, 611 F.2d 137, 149 (6th Cir. 1979). Because the Sixth Circuit found that the amendments only ameliorated but did not eliminate the plaintiffs' concerns, the court rejected the suggestion of mootness. Similarly, the former Fifth Circuit rejected a suggestion of mootness after the Environmental Protection Agency (the defendant-respondent in the case) withdrew its required approval of a state air quality plan. *See Natural Resources Defense Council v. Environmental Protection Agency*, 489 F.2d 390 (5th Cir.1974), *rev'd in part on unrelated grounds sub nom. Train v. Natural Resources Defense Council*, 421 U.S. 60, 95 S.Ct. 1470, 43 L.Ed.2d 731 (1975) (not addressing mootness question on appeal and thus implicitly accepting Fifth Circuit's rejection of mootness challenge to jurisdiction). Although the challenged air quality plan was no longer current, "the EPA's position [was] still considerably at odds with the position taken by the [plaintiffs]." *Id.* at 405. In that case, the facts revealed that the EPA was likely to approve a plan very similar to the challenged plan. Therefore, the Fifth Circuit refused to find the case moot. In this case, the Secretary has *already* adopted a rule similar to the invalidated 1979 rule.

The 1986 rule does not afford the complete relief anticipated by the Supreme Court in *County of Los Angeles v. Davis* in its two prong test for mootness. The parties still have an interest in this litigation sufficient to satisfy the constitutional requirement of a vital case or controversy. In light of these two factors, we hold that the claims of the hospitals have not been mooted by the promulgation by the Secretary of the 1986 regulation.

### 2. *Claims Evading Review*

In addition to a finding that the 1986 regulation does not eliminate the hospitals' interest in reimbursement under the pre–1979 rules, the second prong of the *County of Los Angeles* mootness test also suggests a rejection of the mootness argument. In this case, it cannot be said with "assurance that 'there is no reasonable expectation ..' that the alleged violation will recur." 440 U.S. at 631, 99 S.Ct. at 1383. This rule, in conjunction with the exception to the mootness doctrine for cases capable of evading review, supports a finding that this case is not moot.

The facts of this case are unlike most instances where the "evasion" exception is appropriate; usually the exception applies to cases with very short duration. Nevertheless, if this case is dismissed as moot, we would be creating a class of cases capable of evading judicial review by the very fact that, after years of litigation challenging an administrative regulation, an agency would be able to moot a given lawsuit by promulgating a new regulation. If we were to find this case moot, the hospitals would have to restart on a long and expensive litigation, only to be confronted again with the possibility that the Secretary could moot that litigation. The Secretary has in fact even acknowledged that such a scenario is conceivable; the Secretary suggested that this possibility should not be a cause for concern. *See* 51 Fed.Reg. at 11186.

---

withdrew its cross-appeal, the D.C.Circuit ruled that the case was moot. Unlike the case before this court, the *Relf* court found that the "litigation [was] wanting in the vitality appropriate for resolution ... of the legal questions presented." *Id.* at 727.

Also distinguishable is the opinion of the District of Columbia Circuit in *Center for Science in the Public Interest v. Regan*, 727 F.2d 1161 (D.C. Cir.1984). That case involved an attempt to delay the recision of a regulation that had yet to go into effect. After the first recision was suc-

cessfully challenged in district court, the D.C. Circuit held that a subsequent recision promulgated during the appeal made the appeal moot. The case now before this court, on the other hand, involves an attempt to retain an already existing regulation that substantially affects the amount of the hospitals' reimbursement. Ultimately, as is clear in our discussion below of the possibility of abusive regulation, Judge Wright's dissent in the *Center for Science* case seems to follow a stronger line of reasoning than is employed by the majority.

Without at all wishing to suggest any improper motive on the part of the Secretary in this case, and realizing that the Secretary is concerned about the liquidity of the trust fund crucial to the entire Medicare program, it is still a concern that a finding of mootness could permit, in some future case, an abuse of the interaction between administrative agencies and the courts. "Where a court is asked to adjudicate the legality of an agency order, it is not compelled to dismiss the case as moot whenever the order expires or is withdrawn." *Nader v. Volpe,* 475 F.2d 916, 917 (D.C.Cir.1973). In a review of agency action, a sufficiently live controversy may remain in a case even after a regulation or order initially giving rise to the case is no longer in effect. *See Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911); *Environmental Defense Fund, Inc. v. Gorsuch,* 713 F.2d 802, 810–11 (D.C.Cir.1983); *Big Rivers Electric Corp. v. EPA,* 523 F.2d 16, 19 (6th Cir.1975), *cert. denied,* 425 U.S. 934, 96 S.Ct. 1663, 48 L.Ed.2d 175 (1976).

This case presents two additional concerns that militate against a finding of mootness: First, we would be creating a situation in which an agency, if it were inclined, could avoid review of an agency action and potentially abuse the review process. The ability to moot a case by replacing a challenged regulation with a similar rule after years of litigation could be abused. Second, the ability of an agency to moot a case at will could lead to an enormous waste of judicial resources.[32] Both of these concerns, about judicial resources and abusive rulemaking, are present in the case now before the court,

and lead to the conclusion that the case is not moot.[33]

■ Our rejection of the Secretary's mootness arguments are further supported by equitable concerns arising from the court's and appellees' reliance on the Secretary's statements early in the litigation in this court. Nine months before the new 1986 rule became final (but well after the Secretary had begun work on it), the Secretary requested that we hold the *Baptist Hospital* appeal (prior to its consolidation with the *Tallahassee Memorial* case) in abeyance pending the disposition of a petition for rehearing in the *Lloyd Noland* case:

Appellants suggest that judicial economy would best be served by holding the briefing in this appeal in abeyance pending final disposition in *Lloyd Noland.* While one of the instant cases involves a jurisdictional issue not present in *Lloyd Noland,* that issue—[the self-disallowance question]—goes only to two hospitals. Thus, whatever the outcome of *Lloyd Noland, it will be dispositive as to all but two hospitals in the instant appeal,* and even the [self-disallowance] issue will be mooted as to the two hospitals if the Court disposes of the case on rehearing in the Secretary's favor. Accordingly, it seems wasteful to spend time and money at this point in briefing the instant appeal. If the *Lloyd Noland* outcome should leave any outstanding issues for decision, the briefing in this appeal could then be so limited.

Appellant's Motion to Hold This Appeal in Abeyance Pending Decision in Another Case at 2, *Baptist Hospital* (Aug. 14, 1985). But for the court's granting of this motion, the case of many of the appellees

---

**32.** An example of such abuse, and an expression of concern about it, is found in *Center for Science in the Public Interest v. Regan,* 727 F.2d 1161 (D.C.Cir.1984) (Wright, J., dissenting).

**33.** We note that the Secretary has stated his view that the promulgation of the 1986 rule "does not detract from the powers of the judiciary to consider hospitals' claims for reimbursement in excess of the amounts allowed by this regulation." 51 Fed.Reg. at 11151. Nevertheless, it is clear from the record that the Secretary rushed the new regulation through

the rule making process "in order to avoid further losses to hospitals litigating the July 1979 malpractice rule." Memorandum from C.M. Haddow to the Secretary (Jan. 24, 1986) (*reprinted in* Appellees' Response in Opposition to Appellant's Motion to Vacate the Judgments Below, Appendix 5). The potential for abuse is real if agencies are allowed to moot claims by hurried rule making. *See Center for Science in the Public Interest v. Regan,* 727 F.2d 1161, 1171 (D.C.Cir.1984) (Wright, J., dissenting).

here would have been briefed and argued (and probably decided) before the new rule became final. A party cannot request a delay in this court and then later attempt to use that delay to tactical advantage. Had the Secretary suggested, in his motion to hold the litigation in abeyance, that the rights of the opposing parties might be compromised by a delay, this court might have hesitated to grant the delay.[34]

### B. *Retroactivity*

■ Having held that the 1986 regulation does not moot the case and require a dismissal, we are still confronted with the question of whether the hospitals should be reimbursed under the 1986 rule or the pre–1979 rule. As noted above, it would not be inconsistent to reject the suggestion of mootness but still hold that the 1986 regulation should apply. For the reasons discussed below, however, we hold that the hospitals should receive reimbursement under the pre–1979 regulations.[35] In doing so, we join the only other court in the country to address fully the issue of the retroactivity of the 1986 rule. *See Mason General Hospital v. Secretary of the Department of Health and Human Services,* 809 F.2d 1220, 1231 (6th Cir.1987).

■ At the outset, we note that the Secretary claims to have broad authority to make retroactive regulations under 42 U.S.C. § 1395x(v)(1)(A) (1982).[36] While it is clear that the Secretary has the power to make corrective adjustments in the reimbursement of individual hospitals and groups of hospitals, we join the Sixth Circuit in finding that the Secretary's power under § 1395x(v)(1)(A) to make retroactive rules is limited. *See Mason General,* 809 F.2d at 1225–27.[37] If the power the Secre-

---

**34.** This case is analogous to *Buccaneer Point Estates v. United States,* 729 F.2d 1297 (11th Cir.1984), in which this court rejected the retroactive application of a new regulation where the private party, acting in good faith, delayed completion of a construction project at the request of the Army Corps of Engineers pending the resolution of the Corps' concerns about the project. After the Corps determined that its concerns were unfounded, the construction was resumed. The Corps then changed a regulation to require additional permits for the construction. In assessing whether the new permits must be obtained, this court wrote that it must "balance the effects of retroactive application against the 'mischief of producing a result which is contrary to statutory design or to legal and equitable principles.'" *Id.* at 1299 (quoting *McDonald v. Watt,* 653 F.2d 1035, 1043 (5th Cir.1981) (citations omitted)). Because the parties had acted in good faith in attempting to cooperate with the Corps, this court rejected the contention that the new regulation should apply retroactively. Similar equitable concerns suggest that the case now before this court should not be dismissed as moot.

**35.** We note at the outset that this court rejected, in the *Lloyd Noland* case, the Secretary's request (made prior to the 1986 rule making) to remand the malpractice insurance issue to the Secretary for further rule making. 762 F.2d at 1569. Many other courts have rejected similar requests. *See, e.g., Cumberland Medical Center v. Secretary of Health and Human Services,* 781 F.2d 536, 538–39 (6th Cir.1986); *DeSoto General Hospital v. Heckler,* 766 F.2d 182, 186, *modified on rehearing,* 766 F.2d 186, *original opinion reinstated on rehearing of rehearing,* 776 F.2d 115, 116 (5th Cir.1985); *Bedford County Memo-*

*rial Hospital v. Health and Human Services,* 769 F.2d 1017, 1024 (4th Cir.1985); *Menorah Medical Center v. Heckler,* 768 F.2d 292, 297 (8th Cir.1985); *Abington Memorial Hospital v. Heckler,* 750 F.2d 242, 244 (3d Cir.1984), *cert. denied,* — U.S. —, 106 S.Ct. 180, 88 L.Ed.2d 149 (1985); *Walter O. Boswell Memorial Hospital v. Heckler,* 628 F.Supp. 1121, 1128 (D.D.C.1985). None of these courts were confronted with a situation in which the proposed rule making was already complete.

**36.** The Secretary's regulations shall "provide for the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive." 42 U.S.C. § 1395x(v)(1)(A)(ii) (1982). That section could be read to be limited to corrective adjustments for individual hospitals in the currently reviewed cost year. Alternatively, the Secretary argues that the section gives him power to make retroactive changes to the "methods of determining costs" covering any number of past years, presumably back to the inception of the Medicare program in 1966.

In this case, the Secretary's argument is undermined by the fact that, in 1985, a bill was introduced in Congress (but never passed) that would have given the Secretary the power to make retroactive rules concerning medical malpractice insurance. *See* S. 1550, 99th Cong., 1st Sess. § 115 (1985); *see also* 131 Cong.Rec. S10800, S10802, S10805 (1985).

**37.** After a review of the legislative history of this section, the Sixth Circuit rejected the Secretary's interpretation. *See Mason General,* 809 F.2d at

tary seeks is not limited, then he would have the almost unreviewable ability to change retroactively any of the rules within which the hospitals operate; he would be able to reduce the amount of reimbursement the hospitals are due long after the hospitals actually receive and spend the money.[38] We cannot accept such a broad power, and we therefore will review the Secretary's action in this case using the standard judicial tests of retroactive administrative actions.

Because the 1986 rule is retroactive on its face, there is no need to remand the case to the agency for a determination of whether the rule was intended to be retro-

active.[39] In analyzing this retroactivity, we are guided by the Supreme Court's statement that the effects of "retroactivity must be balanced against the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles." *SEC v. Chenery Corp.,* 332 U.S. 194, 203, 67 S.Ct. 1575, 1581, 91 L.Ed. 1995 (1947).[40]

### 1. *Balancing the Interests*

In making the balance suggested by *SEC v. Chenery,* we must consider the interests of the parties in reimbursement under the 1986 rule versus the pre–1979 rule. On the one hand, the Secretary is in good faith

1225–27. We join the Sixth Circuit in holding that "retroactive rulemaking should be upheld only 'when the public interest in retroactively curing the defect outweighs the harm to private interests resulting from the invalid first instance rulemaking.'" *Id.* at 1226 (quoting *Bedford County Memorial Hospital v. Dep't. of Health and Human Services,* 769 F.2d 1017, 1024 (4th Cir.1985)).

The Secretary advances a variety of cases in his support, including *Springdale Convalescent Center v. Mathews,* 545 F.2d 943 (5th Cir.1977). As the Sixth Circuit points out, however, all of the cited cases involve a regulation aimed at recapturing accelerated depreciation. Because the Medicare providers had an opportunity to avoid the effect of the regulation in question, the regulation was "predominantly prospective in nature." *Mason General,* 809 F.2d at 1226. Beyond the Sixth Circuit, at least one other court has rejected the Secretary's arguments. *See Daughters of Miriam Center for the Aged v. Mathews,* 590 F.2d 1250, 1258 n. 23 (3d Cir. 1978). *But see Kingsbrook Jewish Medical Center v. Richardson,* 486 F.2d 663 (2d Cir.1973) (accepting retroactive adjustments). In 1974, the District Court for the Southern District of Florida rejected the Secretary's argument based on 42 U.S.C. § 1395x(v). *See Mount Sinai Hospital of Greater Miami v. Weinberger,* 376 F.Supp. 1099, 1129 (S.D.Fla.1974), *rev'd on other grounds,* 517 F.2d 329, *modified on rehearing,* 522 F.2d 179 (5th Cir.1975), *cert. denied,* 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976). On appeal, the old Fifth Circuit adopted without discussion the district court's analysis of the statute. 517 F.2d at 335. Because of our holding today, we need not decide what precedential value the *Mount Sinai Hospital* opinion holds on this issue.

**38.** "Adoption of the construction urged by the Secretary would result in his ability to use unfettered discretion in enacting regulations that give retroactive effect to any or every change that is made in the formulas for determining

reimbursable costs." *Mason General,* 809 F.2d at 1225. As the Sixth Circuit points out, the Secretary's broad interpretation of his own powers would give him the ability "to repromulgate successive corrective rules with retroactive application to the date of the initial invalidated rule should subsequent attempts at rulemaking likewise be invalidated." *Id.*

**39.** [A] court reviewing an agency decision following an intervening change of policy by the agency should remand to permit the agency to decide in the first instance whether giving the change retrospective effect will best effectuate the policies underlying the agency's governing act.

*National Labor Relations Board v. Food Store Employees Union, Local 347,* 417 U.S. 1, 10 n. 10, 94 S.Ct. 2074, 2080 n. 10, 40 L.Ed.2d 612 (1974). In this case, however, the agency has made the retroactivity of the 1986 regulation clear, and thus a remand to the agency is unnecessary.

**40.** "A court ordinarily will apply the law in effect at the time it renders its decision. It may refuse to do so, however, when to apply newly enacted legislation to events preceding the legislation would result in manifest injustice." *Springdale Convalescent Center v. Mathews,* 545 F.2d 943, 956 (5th Cir.1977) (citing *Bradley v. School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974)).

[W]e note that the administrative agency here has no particular expertise concerning the issue of retroactivity. To the contrary, the extent to which retroactive effect may be given to a promulgation is governed by principles of law that have been developed and refined by the courts, primarily in the context of constitutional adjudication.

*Daughters of Miriam Center for the Aged v. Mathews,* 590 F.2d 1250, 1259 (3d Cir.1978) (refusing to give Medicare regulation retroactive effect).

arguing to conserve the resources of the trust fund from which Medicare is funded. On the other hand is the hospitals' interest in receiving reimbursement under the pre–1979 rule (in most cases substantially more than afforded by the 1986 rule), and in bringing this litigation to a close.

■ The Secretary asserts that the hospitals do not have an interest in avoiding the 1986 rule because it explicitly will not afford lower reimbursement than the 1979 rule. In responding to the asserted interest of the hospitals, however, the Secretary mischaracterizes the comparison: "[T]he new rule should be compared to the 1979 malpractice rule because the 1979 rule— was in effect during the retroactive period. [The new rule] will replace the 1979 rule— not the [pre–1979 rule], which was eliminated for purposes of malpractice insurance cost apportionment in 1979." 51 Fed.Reg. at 11185. "Retroactive application of this final rule will produce no 'ill effects' because ... hospitals can only benefit under this rule as compared to the 1979 malpractice rule." *Id.* at 11184. Yet in this circuit, the *Lloyd Noland* opinion voided the 1979 rule, and ordered that those plaintiffs be paid under the pre–1979 rule. 762 F.2d at 1569. The 1979 rule, invalidated by courts across the country and validated by none, has ceased to carry any authoritative weight. The Secretary now suggests that the void rule be used as a baseline to evaluate the hospitals' interest in reimbursement. Such an approach must be rejected; it would permit the Secretary to benefit from the 1979 rulemaking, even though the hospitals successfully attacked the 1979 rule.[41] Thus, the interest of the hospitals is in the difference between the 1986 reimbursement and the pre–1979 reimbursement (which is what the *Lloyd Noland* hospitals received).[42]

In assessing the Secretary's concern about the well-being of the Medicare trust fund, we note that the Secretary has largely limited the retroactive effect of the 1986 rule to hospitals still in litigation. In response to a suggestion that the 1986 rule should apply to *all* Medicare providers, instead of only those on appeal, the Secretary made clear that the asserted benefits of the new 1986 rule did not outweigh his own concern for administrative finality:

> In implementing this final rule, ... the general importance of ensuring the finality of decisions on reimbursement issues outweighs whatever benefits might be received by providers whose malpractice insurance costs are outside the reopening period.... Regardless of whether our finality and reopening rules benefit or disadvantage providers in a specific case, their overall role of providing certainty in the administrative process is important enough to warrant their consistent application.

51 Fed.Reg. at 11187. Although the Secretary asserts that the pre–1979 reimbursement rule gives hospitals too much, his own concern for administrative finality outweighs his concern about any possible excessive reimbursement. Yet in this case, the hospitals also have a legitimate concern in finalizing this litigation and receiving their reimbursement. The amounts in question are over $100,000 per cost year for some hospitals. The interest that is due to the hospitals since the beginning of this litigation has greatly increased the

---

**41.** In football, if a team gains ten yards on a play in which it commits a five yard penalty, the ball is typically taken back to the original line of scrimmage and the five yard penalty is counted off from there. Adopting the Secretary's approach would be like taking five yards off from the point where the play ended (and thus allowing the team a net five yard gain on a play in which it committed an infraction).

**42.** The Secretary expresses a concern for "inconsistent and unfair reimbursement results among different providers," suggesting that the new rule is necessary to prevent hospitals from receiving "windfalls." 51 Fed.Reg. at 11150.

Yet the Secretary's view is based on the idea that the *Lloyd Noland* opinion (and others invalidating the 1979 rule) is wrong, and that providers paid under that opinion received a windfall. The Secretary ignores the fact that the 1986 rule itself creates "inconsistent and unfair reimbursement results among different providers" by limiting the retroactive effect of the 1986 rule to providers that are still in litigation. As discussed below, the Secretary asserts a power to make retroactive rules, yet he failed to create a retroactive rule that would avoid "inconsistent" results.

amount owed to the hospitals. As this court stated in *Lloyd Noland,* "[f]our years is long enough for [the hospitals] to wait" for their reimbursement. 762 F.2d at 1569. The litigation has already lasted at least five years. If the 1986 rule were given retroactive effect for these appellee hospitals, the hospitals have indicated that they would go through the pointless administrative review process just to return to court to challenge the 1986 rule. The new litigation would likely run three or more years beyond that point. Just as the 1986 rule bowed to the Secretary's concern about administrative finality, so it should bow to the hospitals' need to receive their reimbursement and their interest in bringing this litigation to a close. Balancing the interests of the hospitals and the Secretary, we decline to require that the 1986 rule be followed for these hospitals, and hold that the hospitals should be paid using the pre–1979 rule.

### 2. *Potential for Abuse*

Our decision to require reimbursement under the pre–1979 rule is supported by concerns similar to those expressed in Section II(A)(3) above. While not intending to question the Secretary's good intentions, we cannot condone a regulation aimed specifically at on-going litigations, where the regulation has the effect of preventing the courts from awarding the full relief sought by the parties and already obtained by other hospitals in similar litigation such as *Lloyd Noland.* To permit such a regulation could effectively insulate the Secretary from review by giving him the power to short circuit a case after years of litigation and require the plaintiff parties to start the entire administrative and judicial review process all over again. As discussed above, the Secretary has acknowledged the possibility that, after a future challenge to the 1986 regulation had partially progressed through the courts, he could promulgate

yet another regulation to defuse the challenge to the 1986 rule.[43] Such a power could be used to abuse seriously the litigation process.

Our concerns find support in the case law. In a case involving the retroactivity of a Department of Housing and Urban Development ("HUD") circular issued after an eviction proceeding had been initiated, the Supreme Court ruled that the new circular should be applied to the ongoing proceeding. The Court noted, however, that a "far different case would be presented if HUD were a party to the suit arguing that it could repudiate its obligations under the [relevant] contract because the Housing Authority had failed to apply the circular." *Thorpe v. Housing Authority of Durham,* 393 U.S. 268, 279 n. 33, 89 S.Ct. 518, 525 n. 33, 21 L.Ed.2d 474 (1969). *See also International Ladies' Garment Workers' Union v. Donovan,* 733 F.2d 920 (D.C.Cir. 1984) (rejecting Labor Secretary's attempt to avoid judgment of court by promulgation of new "emergency" regulation). While in this case the Secretary has good faith concerns about administrative finality, the fact that this 1986 rule is retroactive only to hospitals whose claims are still being reviewed makes the 1986 rule too similar to a possible abusive regulation. This court cannot condone such potential abuse.

### C. *The Narrowness of this Opinion*

Finally, we note the narrowness of our holdings on the mootness and retroactivity questions. We limit our holdings to control only the cases of hospitals that already are in the middle of litigation that began as a challenge to the 1979 rule. We do not express an opinion about the possible cases of hospitals whose claims are still being reviewed by the PRRB and have never reached the federal courts. *See* 51 Fed. Reg. at 11194. We express no opinion about the effect of the 1986 regulation on

---

**43.** *See* 51 Fed.Reg. at 11186. Furthermore, the Secretary could arguably gain the benefit of a lower interest rate or shorter period of interest on an ultimate award. While the relevant statutory language is unclear, allowing the 1986 rule to be used would raise the question of whether, in the litigation challenging that rule, interest

should be awarded to a victorious hospital dating from the outset of this litigation or the later challenge. To avoid any such problems, if the 1986 rule were to be used, the federal courts would need to retain jurisdiction over the litigations, to ensure that an award of interest would run from the outset of this litigation.

calculations under the new "Prospective Payment System" that has largely replaced the reimbursement system. *See* 51 Fed. Reg. at 11188. Further, we have not addressed any possible constitutional arguments concerning the due process and equal protection rights of the hospitals that might be affected by the 1986 rule versus those paid under the 1979 rule. *See Mason General Hospital v. Secretary of the Dept. of Health and Human Services,* 809 F.2d 1220, 1231 (6th Cir.1987). Lastly, to make clear, we do not express any opinion as to the prospective validity of the 1986 rule itself. *See id.* That issue will surely arise in litigation soon, but the validity of the rule is not appropriately before this court in this case—just as the 1986 rule cannot appropriately prevent this court from considering awarding relief in this case.

### III. THE SELF–DISALLOWING HOSPITALS

Having decided that the 1986 rule is not properly retroactive in this case, we are left with the question of the five self-disallowing hospitals—the hospitals that followed the 1979 regulation in their cost reports (thereby "disallowing" the desired pre–1979 reimbursement themselves) but later timely appealed to the PRRB for reimbursement under the pre–1979 rule. The Secretary argues that these hospitals "failed to include [the malpractice insurance] claims on their cost reports or otherwise raise an issue with respect to such claims with the intermediary." Appellant's Brief at 14. According to the Secretary, because the hospitals did not force their intermediaries to disallow any claimed reimbursement, the hospitals cannot appeal to the PRRB. The Secretary focuses on 42 U.S.C. § 1395oo(d), which defines the decision-making power of the PRRB. The Secretary argues that the PRRB "properly declined [to take jurisdiction and] to consider the hospitals' claims since the hospitals had failed to satisfy the statutory prerequisites for a hearing on these claims." *Id.* If the PRRB did not have jurisdiction, the Secretary argues, then neither the district courts nor this court can take jurisdiction over the claims.

In the *Baptist Hospital* case, the district court rejected these arguments, writing that the self-disallowing hospitals

filed cost reports as required by the Medicare statute regulation, and malpractice insurance costs here at issue were matters "covered by such cost reports" within the meaning of the Medicare statute. Because hospital administrators for these hospitals were reluctant to file claims specifically designating cost amounts alleged to be violative of the statute because counsel believed that to do so might subject them to criminal charges for fraud, does not diminish or in any way dilute the fact that [the self-disallowing hospitals] in fact did file their "cost reports" as required and within those reports was contained the basis for contest and reimbursement for inaccurately or improvidently determined allowances.

Order Denying Motion to Dismiss at 5–6, *Baptist Hospital.* Judge Stafford, in the *Tallahassee Memorial* case, cited the *Baptist Hospital* district court decision.

At the outset we note that this circuit has recently decided a closely related case, *North Broward Hospital District v. Bowen,* 808 F.2d 1405 (11th Cir.1987), which involves the appeals of self-disallowing hospitals to the PRRB. The *North Broward* case held that the PRRB properly rejected the appeal of a hospital district that failed to include certain allowable costs in its cost report. As will be discussed below, however, *North Broward* does not control this case because this case involves a different jurisdictional grant of judicial review, one added by Congress after the cost year involved in the *North Broward* case. Unlike in this case, the hospitals in *North Broward* were not challenging the validity of a Medicare regulation, but were merely attempting to raise with the PRRB claims that they inexplicably failed to raise with their intermediaries. *See id.* at 1407 n. 2. While the *North Broward* case is in line with the leading case in this area, *Athens Community Hospital v. Schweiker,* 743 F.2d 1 (D.C.Cir.1984) (*Athens II*), neither opinion requires a finding that the PRRB

correctly rejected the appeals of the five hospitals involved here.

### A. *Standard of Review*

Before attempting to resolve this issue, we must first consider the appropriate scope of this court's review of the Secretary's determination of the jurisdiction of the PRRB. Typically, the "standard of review is narrow and this court will not substitute its judgment for that of the agency." *Lloyd Noland*, 762 F.2d at 1565; *accord Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). The "interpretation of an agency charged with the administration of a statute is entitled to substantial deference." *Blum v. Bacon*, 457 U.S. 132, 141, 102 S.Ct. 2355, 2361, 72 L.Ed.2d 728 (1982). "Where ... the agency is interpreting its own structure in a technical and complex area, its interpretation should be sustained if it is reasonable and permissible construction of the statute." *Southern Motor Carriers Rate Conference v. United States*, 773 F.2d 1561, 1567 (11th Cir. 1985). "Absent a clear error of judgment, the agency's construction should be upheld." *North Broward*, 808 F.2d at 1408.

■■■ In this case, however, we are not reviewing the Secretary's interpretation in a "technical and complex" area. The question of the self-disallowing hospitals revolves around the admittedly difficult interpretation of a few simple phrases. More importantly, the statute to be interpreted is a jurisdictional statute—a type of statute with which courts are quite familiar. *See St. Luke's Hospital v. Secretary of Health*

*and Human Services*, 810 F.2d 325 (1st Cir.1987) (refusing to defer to Secretary on interpretation of 42 U.S.C. § 1395oo); *Celanese Chemical Company v. United States*, 632 F.2d 568, 572 (5th Cir. Unit A 1980) (refusing to defer to agency on jurisdictional question), *cert. dismissed*, 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981). While being deferential, we must carefully consider any agency action that potentially has the effect of barring access to the federal courts. This is especially true in light of the clear expression by Congress of its concern for efficient access to judicial review, as discussed below.[44]

### B. *Interpretation of 42 U.S.C. § 1395oo*

In attempting to resolve the question of the self-disallowing hospitals, we must closely scrutinize 42 U.S.C. § 1395oo, the section that establishes and controls the PRRB, and that permits appeals of certain claims to the federal courts. For this case, three subsections of § 1395oo are relevant: Subsection (a) sets out prerequisites for appeal to the PRRB, subsection (d) defines the decisional power of the PRRB, and subsection (f) describes the conditions under which a Medicare provider can obtain judicial review of reimbursement claims.[45]

In this case, both the district courts and the parties have focused on the interpretation of subsection (d), which outlines the basis and extent of decisions of the PRRB. Similarly, most of the cases cited by the parties base their decisions on analyses of subsection (d). *See, e.g., Athens Community Hospital v. Schweiker ("Athens II")*, 743 F.2d 1, 4–9 (D.C.Cir.1984).[46] After a

---

**44.** The need to carefully consider this jurisdictional question is highlighted by the fact that the PRRB itself has been inconsistent in interpreting its own jurisdiction. On a number of occasions the PRRB has decided questions not raised to the intermediaries. *See, e.g., Ravenswood Hospital Medical Center v. Blue Cross Association/Health Care Service Corp.*, Medicare and Medicaid Guide (CCH) ¶ 31,945, at 9607–08 (PRRB 1982); *St. Joseph Medical Center v. Blue Cross Association/Blue Cross of Southern California*, Medicare and Medicaid Guide (CCH) ¶ 30,925, at 9852 (PRRB 1981); *Unity Hospital v. Blue Cross Association/Blue Cross of Northern California*, Medicare and Medicaid Guide (CCH) ¶ 31,097, at 10,407 (PRRB 1981).

**45.** All three of these subsections are quoted in relevant part *supra* at 1439–1440. The full text of subsection (f), with amendments indicated, is reproduced in Appendix I.

**46.** This court's recent opinion in *North Broward Hospital District v. Bowen*, 808 F.2d 1405 (11th Cir.1987), explicitly relies on the *Athens II* opinion. *Id.* at 1408–09. Because both *North Broward* and *Athens II* involved appeals procedurally different from the appeals in this case, a different grant of judicial review applies, and different Congressional concerns guide this court's decision. Neither case addressed the situation now before this court, in which hospitals are utilizing a grant of judicial review that

review of the legislative history of all of § 1395oo, however, we find that because of the specific circumstances of this case subsection (f) is more relevant to the question of self-disallowing hospitals in this case. Recognizing the novelty of this approach, we think that a review of the history of the PRRB itself will reveal the importance and meaning of subsection (f). The legislative history of that subsection, considered and amended by Congress more than any other part of § 1395oo, indicates the concern of Congress in quick and efficient judicial review of issues like those presented in this litigation.

### 1. *Legislative History of § 1395oo* [47]

In 1972, Congress identified as a problem in the Medicare statutes the lack of any "specific provision for an appeal by a provider of services of a fiscal intermediary's final reasonable cost determination." H.R. Rep. No. 231, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Admin.News 4989, 5095. Congress therefore established the Provider Reimbursement Review Board (the "PRRB") and set out "a specific procedure for settling disputed final determinations applying to the amount of program reimbursement." *Id.* The PRRB was aimed at "assist[ing] providers and intermediaries to reach reasonable and mutually satisfactory settlements of disputed reimbursement items." *Id.* Congress added that the new procedure "would not apply to questions of coverage or disputes involving individual beneficiary claims." *Id.*

The resulting provision in the Social Security Amendments of 1972, Pub.L. No. 92–603, § 243, 86 Stat. 1329, 1420 (1972), created what is now 42 U.S.C. § 1395oo. As originally enacted in 1972, the provisions of § 1395oo have gone substantially unchanged, with the exception of subsection (f), controlling judicial review of PRRB actions. The original subsection (f) permitted only limited judicial review, confined to cases where the Secretary, on his or her own motion, reversed or modified a PRRB decision:

(f) A decision of the [PRRB] shall be final unless the Secretary, on his own motion, and within 60 days after the provider of services is notified of the [PRRB's] decision, reverses or modifies (adversely to such provider) the [PRRB's] decision. In any case where such a reversal or modification occurs the provider of services may obtain a review of such decision by a civil action commenced within 60 days of the date he is notified of the Secretary's reversal or modification. Such action shall be brought in the district court of the United States for the judicial district in which the provider is located or in the District Court for the District of Columbia and shall be tried pursuant to the applicable provisions under chapter 7 of title 5, United States Code, notwithstanding any other provisions in section 205.

86 Stat. at 1422.

Two years later, Congress amended subsection (f) and expanded the scope of the providers' right to appeal to the federal courts. The amended section, renumbered as (f)(1),[48] permits appeal of *any* decision of the PRRB, whether or not the Secretary modifies the decision. The amendment, which left the third sentence of the original section intact, replaced the first two sentences with language that has not since been amended:

(f)(1) A decision of the [PRRB] shall be final unless the Secretary, on his own motion, and within 60 days after the provider of services is notified of the [PRRB's] decision, reverses, affirms, or modifies the [PRRB's] decision. Providers shall have the right to obtain judicial review of any final decision of the [PRRB], or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final

---

Congress specifically added to facilitate challenges to Medicare regulations.

**47.** The amendments to subsection (f) are charted in Appendix I of this opinion.

**48.** Subsections (f)(2) and (f)(3), added in 1974, allow for the payment of interest to the provider on any contested amounts awarded by the federal courts.

decision by the [PRRB] or of any reversal, affirmance, or modification by the Secretary is received.

Act of Oct. 26, 1974, Pub.L. No. 93–484, 88 Stat. 1459.

In 1980, Congress continued its trend toward broad judicial review, and added an entirely new authorization of review. Between the second and third sentences in subsection (f)(1), as amended in 1974, Congress inserted a method to bypass parts of the administrative process when challenging a Medicare regulation:

Providers shall also have the right to obtain judicial review of any action of the fiscal intermediary which involves a question of law or regulations relevant to the matters in controversy whenever the [PRRB] determines (on its own motion or at the request of a provider of services as described in the following sentence) that it is without authority to decide the question, by a civil action commenced within sixty days of the date on which such determination is rendered. If a provider of services may obtain a hearing under subsection (a) and has filed a request for such a hearing, such provider may file a request for a determination by the [PRRB] of its authority to decide the question of law or regulations relevant to the matters in controversy (accompanied by such documents and materials as the [PRRB] shall require for purposes of rendering such determination).... [T]he determination shall be considered a final decision and not subject to review by the Secretary.

Omnibus Reconciliation Act of 1980, Pub.L. No. 96–499, § 955, 94 Stat. 2599, 2647–48. As originally introduced, the new authorization of judicial review was included as a new subsection of § 1395oo(f), H.R. 7972, 96th Cong., 2d Sess. § 4 (1980); the enacted version was instead inserted within the existing § 1395oo(f)(1). Both the introduced and enacted versions contained the explicit reference to § 1395oo(a) as a prerequisite to judicial review of legal questions; neither version mentioned other subsections within § 1395oo.

The intent of the amendment was to end pointless administrative litigation:

Under present law, a provider's dissatisfaction with a particular determination made by its fiscal intermediary on the basis of a regulation issued by the Secretary must first be brought to the [PRRB], even though the [PRRB] may not have the authority to reverse or overrule the regulation. (The [PRRB] has no authority, for example, to rule on the legality of the Secretary's regulations but it must, nonetheless, conduct a full review of the challenge.) The effect of this process has been to delay the resolution of controversies for extended periods of time and to require providers to pursue a time-consuming and irrelevant administrative review merely to have the right to bring suit in a U.S. District Court. Title VIII addresses this problem by giving medicare providers the right to obtain immediate judicial review in instances where the [PRRB] determines that it lacks jurisdiction to grant the relief sought.

H.R.Rep. No. 1167, 96th Cong., 2d Sess. 394, *reprinted in* 1980 U.S.Code Cong. & Admin.News 5526, 5757. Congressman Cecil Heftel, a proponent of the legislation, explained the amendment more forcefully:

Unfortunately, the sound intentions of Congress [in creating the PRRB] never have been effectuated, due primarily to fundamental weaknesses that were built into the statute.

Specifically, under current law providers may not seek judicial review of regulations or policies of [the Department of Health and Human Services ("DHHS")] until after the provider has gone through a long, tortuous process of preparing and filing cost reports; awaiting a decision by the fiscal intermediary; and appealing that decision to the PRRB, which must declare what everybody already knows— that the PRRB has no authority under law to decide issues regarding the validity of DHHS policies and regulations. Medicare (and thus all taxpayers) must pay a significant portion of the huge costs of conducting this needless, always fruitless litigation exercise. Our bill

would change this situation by allowing the provider to obtain immediate judicial review in such cases—namely, those in which the PRRB has no authority to decide the case.

126 Cong.Rec. 22218 (1980). With the exception of modifications to clarify the time for appeal and to facilitate group appeals, § 1395oo(f) has remained unchanged since the 1980 amendments.[49]

### 2. Interpretation of § 1395oo(f)

As the legislative history reveals, 42 U.S.C. § 1395oo(f) contains two separate and distinct grants of judicial review to Medicare providers. See Appendix I of this opinion. The first grant of review, contained in the first two sentences in the subsection, has its roots in the original establishment of the PRRB in the 1972 Medicare amendments. Originally limited to review of reversals by the Secretary of PRRB decisions, the grant of review was expanded in 1974 to include all decisions of the PRRB. By its terms, and in light of the legislative history, this grant of review refers to "decisions of the [PRRB]" and is affected by subsection (d), which defines the scope of the decision-making power of the PRRB. This grant of judicial review shall be designated in this opinion as the "1972 grant."

 The second grant of judicial review, contained in the third through sixth sentences of subsection (f), was added by the 1980 amendments. The grant of review does not involve decisions of the PRRB, but rather permits review when the PRRB "determines" that it does not have the authority to make a decision about an issue. This second grant of review, designated the "1980 grant," explicitly incorporates the jurisdictional requirements of subsection (a), but makes no reference to subsection (d) or any other subsection. Furthermore, subsection (d) itself requires that decisions of the PRRB be based on a hearing before the PRRB; the 1980 grant of judicial review in subsection (f), how-

ever, directly dispenses with the hearing. In light of the language and legislative history of subsection (f), we hold that the 1980 grant of judicial review in that subsection does not concern decisions of the PRRB, and thus the provisions of subsection (d) concerning decisions of the PRRB are irrelevant to the 1980 grant of judicial review. To obtain judicial review under the 1980 grant of review, providers need only fulfill the requirements of subsection (a)— the only subsection incorporated into the language of the grant of review. Thus, in cases where the PRRB does not have the authority to decide a question of law or regulation, a provider can obtain judicial review by fulfilling the requirements of subsection (a) and petitioning for a determination under subsection (f) that the PRRB lacks the needed authority.

### 3. Analysis of the Relevant Case Law

None of the cases cited by the Secretary undermine our conclusions. On the other hand, the cases cited by the hospitals that have found jurisdiction in similar cases do not utilize the same analysis as we have in this case. This is because most of the cases did not deal with challenges to regulations under the 1980 grant of judicial review, and none of the cases reviewed the full legislative history of 42 U.S.C. § 1395oo.

### a. Cases Rejecting PRRB (and thus Judicial) Review

The leading set of cases in this area is Athens Community Hospital v. Schweiker (Athens I), 686 F.2d 989 (D.C.Cir.1982), modified on rehearing Athens Community Hospital v. Schweiker (Athens II), 743 F.2d 1 (D.C.Cir.1984). In those opinions, the District of Columbia Circuit ruled that the PRRB was correct in refusing to exercise jurisdiction in a case where the providers failed to include certain taxes and stock option costs in their cost reports but four years later attempted to reopen the reports

---

**49.** The Social Security Amendments of 1983, Pub.L. No. 98–21, § 602, 97 Stat. 65, 163, included changes to facilitate and require, in certain circumstances, group appeals. The Deficit Re-

duction Act of 1984, Pub.L. No. 98–369, § 2351, 98 Stat. 494, 1098, changed parts of 42 U.S.C. § 1395oo to clarify the time period for appeals and requirements for group appeals.

and claim reimbursement for them. The D.C.Circuit reasoned that, because the language of 42 U.S.C. § 1395oo(d) suggests that the PRRB only has the power to review claims that were raised in the cost reports, the PRRB could not consider the hospitals claims (and thus the federal courts could not entertain the suits in question).

*Athens I* and *II*, however, are not directly instructive on the issue confronting this court. The *Athens* case was based on the 1972 grant of judicial review, not the 1980 grant that is at issue here.[50] In fact, the *Athens* cases involved cost years prior to 1980, and thus the second grant of judicial review, added to 42 U.S.C. § 1395oo(f) in 1980, was not at all before the D.C.Circuit in those opinions. The focus of the *Athens* court was on subsection (d), which is relevant to the 1972 grant of judicial review, but not to the 1980 grant. *See, e.g., Athens II*, 743 F.2d at 9. The *Athens* cases simply do not consider the factual situation presented here, where self-disallowing hospitals challenged a regulation. Similarly, this court's opinion in *North Broward* involved an appeal under the 1972 grant of review, and the cost year challenged was 1977, before the creation by Congress in 1980 of the second grant of judicial review.[51]

A number of other cases that plausibly support the Secretary's position also focus only on the 1972 grant of judicial review. In facts very similar to those in the *Athens* case, the Sixth Circuit upheld the PRRB's refusal to take jurisdiction. *See Saline Community Hospital Association v. Secretary of Health and Human Services*, 744 F.2d 517 (6th Cir.1984) (hospital failed

to include claim for return on net-invested-equity capital in 1979 cost report). Three other cases involved a challenge to a provision in the Provider Reimbursement Manual, which is not a regulation promulgated by the Secretary. In those cases, the PRRB took jurisdiction over similar claims of other hospitals, and thus apparently had the authority to decide the issue (unlike with a challenge to a regulation). *See Community Hospital of Roanoke v. Health and Human Services*, 770 F.2d 1257 (4th Cir.1985);[52] *St. Mary of Nazareth Hospital Center v. Schweiker*, 741 F.2d 1447 (D.C.Cir.1984); *University of Michigan Hospitals v. Heckler*, 609 F.Supp. 756 (E.D.Mich.1985).

Only two opinions, recently issued by the Sixth Circuit, are directly analogous to this case. *See Baptist Hospital East v. Secretary of Health and Human Services*, 802 F.2d 860 (6th Cir.1986). That case involved a challenge by a self-disallowing hospital to a regulation regarding free health care to non-Medicare patients. The *Baptist Hospital East* court essentially required the hospitals to meet the terms of 42 U.S.C. § 1395oo(d), even though a regulation was being challenged under the 1980 grant of review under § 1395oo(f). *See Bethesda Hospital v. Secretary of Health and Human Services*, 810 F.2d 558, 562 (6th Cir. 1987) (bound by but suggesting disagreement with *Baptist Hospital East*). *Baptist Hospital East*, which conflicts with our holding in this case, relies heavily on *Athens II* and *Saline*, neither of which involved the 1980 grant of judicial review. Because the *Baptist Hospital East* opinion did not address the differences between the

---

**50.** Furthermore, the *Athens* cases did not involve self-disallowing hospitals, although dicta in *Athens II* seems to reject claims of self-disallowing hospitals (and even though dicta in the *Athens I* opinion seems to *endorse* self-disallowance).

**51.** The Athens cases involved claims for reimbursement of various income tax and stock option costs that were not submitted with the hospitals' costs reports due to "inadvertence." *Athens I,* 686 F.2d at 991, 992 n. 1. Similarly, the *North Broward* case involved claims for various tax assessment costs that were not

claimed in the hospitals' costs reports. 808 F.2d at 1407. The hospitals offered "no explanation" for the failure to claim the costs. *Id.* at 1407 n. 2.

**52.** At least one court, in *Alexandria Hospital v. Heckler,* 660 F.Supp. 23 (E.D.Va.1985) applied the Fourth Circuit's opinion in *Community Hospital of Roanoke* to the exact situation presented by the case now before the court. The district court held that the PRRB *did* have jurisdiction over self-disallowing hospitals, and thus federal review was appropriate. At 1439–1440.

two grants of review, and did not analyze the legislative history of the relevant provisions, we decline to follow its reasoning.[53]

### b. Cases Finding PRRB (and thus Judicial) Review

At least two circuit courts, and a number of district courts, have rejected the holdings of the cases discussed above. The courts have not, however, utilized the same analysis as we have here. Again, this is because most (but not all) were faced with appeals arising out of the 1972 grant of judicial review. Most of these courts based their holdings on a broad interpretation of § 1395oo(d), finding that the PRRB was not limited in its review to items raised in the cost reports. Those cases that involve the 1972 grant of review have been rejected by this court in *North Broward.*

In *St. Mary of Nazareth Hospital Center v. Department of Health and Human Services,* 698 F.2d 1337 (7th Cir.), *cert. denied,* 464 U.S. 830, 104 S.Ct. 107, 78 L.Ed.2d 110 (1983), the Seventh Circuit confronted the same jurisdictional issues as did the D.C.Circuit in *Athens II,* but reached the opposite result. On the issue of self-disallowance, the Seventh Circuit explicitly held that the PRRB could consider matters not raised to the intermediary. The *St. Mary of Nazareth Hospital Center* opinion involved the 1972, not 1980, grant of judicial review. Similarly, the First Circuit recently rejected the reasoning of the *Athens II* case, in a case involving the 1972 grant of review. *See St. Luke's Hospital v. Secretary of Health and Human Services,* 810 F.2d 325 (1st Cir.1987); *see also Adams House Health Care v. Heckler,* 604 F.Supp. 110 (N.D.Calif.1984); *Our Lady of Lourdes Memorial Hospital v. Schweiker,* 1982 Medicare & Medicaid Guide (CCH)

¶ 32,154, at 10,561 (N.D.N.Y. July 26, 1982); *Memorial Hospital v. Schweiker,* 1981 Medicare & Medicaid Guide (CCH) ¶ 31,603, at 9917 (M.D.Fla. Oct. 20, 1981).

Other than the Sixth Circuit cases discussed above, we have located one case addressing the self-disallowance question in the context of the 1980 grant of judicial review; the case involved the same malpractice insurance regulation at issue here, and is nearly identical to this case. *See Alexandria Hospital v. Heckler,* 660 F.Supp. 23 (E.D.Va.1985), *on remand from Bedford County Memorial Hospital v. Health and Human Services,* 769 F.2d 1017 (4th Cir.1985), *aff'g Alexandria Hospital v. Heckler,* 586 F.Supp. 581 (E.D.Va.1984). The court ruled in favor of the hospitals and found federal jurisdiction, although not on the same grounds as we find jurisdiction. Like the courts considering appeals arising under the first grant of judicial review, *Alexandria Hospital* focused on 42 U.S.C. § 1395oo(d), without considering the legislative history of § 1395oo.

### 4. Conclusion

The clear language of the statute and the legislative history of the PRRB lead us to conclude that a self-disallowing provider need fulfill only 42 U.S.C. § 1395oo(a) in order to be able to appeal to the federal courts under the 1980 grant of judicial review in § 1395oo(f). By the terms of subsection (f), a self-disallowing hospital that meets the conditions of subsection (a) can request the PRRB to determine whether it has the authority over a challenge to a regulation. If the PRRB does not have the authority to grant relief to the provider, the provider can appeal to the federal courts.[54]

---

**53.** Even if the *Baptist Hospital East* opinion were for some reason binding on this court, we would still distinguish it from the case now before this court. In interpreting *Athens II,* the *Baptist Hospital East* court wrote that "a provider is able to appeal to the [PRRB] when it self-disallowed a cost *but also* timely indicated its disagreement with and challenge to the regulations or rulings compelling the self-disallowance." 802 F.2d at 865–66 (emphasis added). Here, where over 6000 hospitals (including the

plaintiffs here) challenged the malpractice insurance regulation in *Hadley Memorial Hospital v. Schweiker,* 689 F.2d 905 (10th Cir.1982), it is safe to say that the hospitals "timely indicated [their] disagreement" with the regulation.

**54.** Our finding that the PRRB had jurisdiction over the claims of the self-disallowing hospitals (and thus our finding that this court has jurisdiction), is strongly supported by the recent unanimous Supreme Court opinion in *Bowen v.*

This conclusion is supported by considering the alternative. Were we to hold that the PRRB (and therefore the federal courts) could not hear the self-disallowing hospitals' challenge to the 1979 rule, we would be ordering the Secretary to reimburse those hospitals under a rule that this court has declared null and void in the *Lloyd Noland* case. The *Lloyd Noland* court ruled that the 1979 rule was arbitrary and capricious under the Administrative Procedures Act. Although *Lloyd Noland* did not reach the question, every circuit court to consider the underlying legal validity of the 1979 rule has found that the rule violates the Medicare Act, 42 U.S.C. § 1395x(v)(1)(A), and thus is illegal as well as being arbitrary and capricious. See

*Michigan Academy of Family Physicians, —— U.S. ——*, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986). In that case, the Court considered a challenge by physicians of a regulation, promulgated under Part B of the Medicare program, which authorizes payment of benefits in different amounts for similar physicians' services. The Secretary contended that Congress had forbidden judicial review of all questions affecting the amount of benefits payable under Part B of Medicare. The Court rejected this contention and held that jurisdiction existed.

While the *Michigan Academy* case does not directly control this case, the Court's analysis of the jurisdictional question is very instructive. The Court began "with the strong presumption that Congress intends judicial review of administrative action." *Id.* at ——, 106 S.Ct. at 2135. The Court then analyzed the administrative review scheme within Part B of Medicare, and concluded that it focused on the *amount* of reimbursement, not on the broader policy decisions inherent in the regulations. "Unlike the *determinations* of amounts of benefits, the *method* by which such amounts are determined ordinarily affects vast sums of money and thus differs qualitatively from the 'quite minor matters' review of which Congress [limited]." *Id.* at —— n. 11, 106 S.Ct. at 2141 n. 11 (emphasis in original). In other words, according to the Court, Congress intended to restrict litigation over benefits where the underlying regulatory scheme is clear, but did not foreclose judicial review of the regulations themselves.

Directly relevant to this case, at least one court has extended the *Michigan Academy* reasoning to ease the limitations on judicial review for Part A hospitals found in 42 U.S.C. § 1359oo. *See Westlake Community Hospital v. Bowen*, No. C2400 (N.D.Ill. Oct. 3, 1986). [Available on WESTLAW, DCTU database]. Because this possible extension of *Michigan Academy*, which came down after the briefs were submitted in this case, has not been fully con-

*Cumberland Medical Center v. Secretary of Health and Human Services*, 781 F.2d 536, 538 (6th Cir.1986); *Bedford County Memorial Hospital v. Health and Human Services*, 769 F.2d 1017, 1023 (4th Cir.1985); *Menorah Medical Center v. Heckler*, 768 F.2d 292, 296 (8th Cir.1985); *St. James Hospital v. Heckler*, 760 F.2d 1460, 1470–72 (7th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 229, 88 L.Ed.2d 228 (1985); *Abington Memorial Hospital v. Heckler*, 750 F.2d 242, 243 (3d Cir.1984), *cert. denied*, —— U.S. ——, 106 S.Ct. 180, 88 L.Ed.2d 149 (1985). This unanimous rejection of the 1979 rule strongly countenances against using the void rule to calculate the reimbursement of the five self-disallowing hospitals.

sidered by the parties or the courts below, we explicitly decline to extend its reasoning at this time. We simply note that *Michigan Academy* strongly supports our holding that the self-disallowing hospitals are properly before this court.

A 1983 Eleventh Circuit Medicare case also strongly supports our holding on this issue, and supports the reasoning behind the *Michigan Academy* case. *See Memorial Hospital v. Heckler*, 706 F.2d 1130 (11th Cir.1983), *cert. denied*, 465 U.S. 1023, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984). Although not directly relevant to the issue in this case, *Memorial Hospital* dealt with an exception to the grant of judicial review found in 42 U.S.C. § 1395oo(f). Section 1395oo(g) exempts from § 1395oo(f) review of certain health care cost items not covered by Medicare, as detailed in 42 U.S.C. § 1395y. The *Memorial Hospital* court rejected an assertion by the Secretary that § 1395oo(g) prevented judicial review of regulations interpreting § 1395y. The court held that § 1395oo(g) only prevented review of individual determinations under § 1395y by the fiscal intermediaries.

> In essence, the issue here does not involve just an intermediary finding that no payment may be made. Rather, it concerns the validity of the regulation itself. The intermediary merely followed the Secretary's regulation. We hold that section 1395oo(g) does not preclude judicial review of the Secretary's regulation defining patient telephones as "personal comfort items." Section 1395oo(g) does not preclude judicial review of the Secretary's regulations.... To expand the non-reviewability of intermediary decisions to include policy decisions of the Secretary would not merely insulate from judicial scrutiny the finding of an intermediary. It would give the Secretary virtually unbridled discretion to prevent reimbursement through regulations. Such a result would run contrary to the presumption favoring judicial review.

706 F.2d at 1133 (citations omitted).

In this case, because there is no dispute that the five self-disallowing hospitals met the requirements of § 1395oo(a) (or § 1395oo(b) dealing with group appeals), we hold that the PRRB should have included those hospitals in its determination that it lacks the authority to decide the challenge to the medical malpractice insurance rule. Therefore these five hospitals are appropriately before the federal courts. We thus affirm the district courts' denials of the Secretary's motions to dismiss the claims of the self-disallowing hospitals.

## IV. CONCLUSION

For the reasons stated in this opinion, we affirm the district courts below and remand these cases for entry of judgments using the pre–1979 rule and including appropriate interest as permitted by statute.

AFFIRMED and REMANDED.

## APPENDIX I

Section 1395oo(f)(1) of 42 U.S.C. is reproduced below, with the amendments indicated. Underlining shows the effect (although not the exact changes) of the 1974 amendments, which allowed appeals of PRRB decisions as well as those of the Secretary. Act of Oct. 26, 1974, Pub.L. No. 93–484, 88 Stat. 1459. **Boldface** shows the provisions added in 1980 creating a second grant of judicial review to challenge regulations. Omnibus Reconciliation Act of 1980, Pub.L. No. 96–499, section 955, 94 Stat. 1569, 2647–48. *Italics* shows the 1983 amendments involving group appeals. Social Security Amendments of 1983, Pub.L. No. 98–21, section 602, 97 Stat. 65, 163. ALL CAPITALS shows the 1984 amendments, which clarified the requirements of group appeals and the time to appeal under the 1980 grant of judicial review. Deficit Reduction Act of 1984, Pub.L. No. 98–369, section 2351, 98 Stat. 494, 1098:

(f) Finality of decision; judicial review; determinations of Board authority; jurisdiction; venue; interest on amount in controversy

(1) A decision of the Board shall be final unless the Secretary, on his own motion, and within 60 days after the provider of services is notified of the Board's decision, reverses, affirms, or modifies the Board's decision. Providers shall have the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received. **Providers shall also have the right to obtain judicial review of any action of the fiscal intermediary which involves a question of law or regulations relevant to the matters in controversy whenever the Board determines (on its own motion or at the request of a provider of services as described in the following sentence) that it is without authority to decide the question, by a civil action commenced within sixty days of the date on which NOTIFICATION OF SUCH DETERMINATION IS RECEIVED. If a provider of services may obtain a hearing under subsection (a) of this section and has filed a request for such a hearing, such provider may file a request for a determination by the Board of its authority to decide the question of law or regulations relevant to the matters in controversy (accompanied by such documents and materials as the Board shall require for purposes of rendering such determination). The Board shall render such determination in writing within thirty days after the Board receives the request and such accompanying documents and materials, and the determination shall be considered a final decision and not subject to review by the Secretary. If the Board fails to render such determination within such period, the provider may bring a civil action (within sixty days of the end of such period) with respect to the matter in controversy contained in such request for a hearing.** Such action shall be

brought in the district court of the United States for the judicial district in which the provider is located *(or, in an action brought jointly by several providers, the judicial district in which the greatest number of such providers are located)* or in the District Court for the District of Columbia and shall be tried pursuant to the applicable provisions under chapter 7 of Title 5, notwithstanding any other provisions in section 405 of this title. *Any appeal to the Board or action for judicial review by providers which are under common ownership or control OR WHICH HAVE OBTAINED A HEARING UNDER SUBSECTION (B) OF THIS SECTION must be brought by such providers as a group with respect to any matter involving an issue common to such providers.*

EDMONDSON, Circuit Judge, concurring in part and dissenting in part:

I concur in the judgment of the court except with respect to the "self-disallowing" hospitals which, I believe, are unentitled to judicial review.

Congress has painstakingly amended 42 U.S.C. 1395oo(f) through the years. Although the overall effect of these amendments has been to liberalize judicial review of administrative decisions regarding Medicare provider reimbursement, this court is not free to disregard the express limitations which Congress has placed on such review.

Subsection (f) of section 1395oo permits a Medicare provider to obtain expedited judicial review of a challenge to a regulation. It provides in pertinent part that: "Providers shall ... have the right to obtain judicial review of any *action of the fiscal intermediary* which involves a question of law or regulations relevant to the matters in controversy...." (emphasis added). Under the plain language of subsection (f), expedited judicial review is limited to review of an "action" by the fiscal intermediary.[1]

The five "self-disallowing" hospitals in this case never requested their fiscal intermediary for reimbursement under the pre–1979 malpractice rule. Instead, they requested the lesser reimbursement available under the 1979 rule. Accordingly, pre–1979 rule reimbursement was never in controversy; and the fiscal intermediary took no action with respect to the "self-disallowing" hospitals' claims (now advanced to this court) for excess reimbursement available under the pre–1979 rule.[2] In the absence of such action by the fiscal intermediary, federal courts lack jurisdiction to review the self-disallowing hospitals' claims.

---

1. Because the language of section 1395oo(f) is a clear expression of Congressional intent, we need not resort to legislative history. *See United States v. Rojas-Contreras,* 474 U.S. 231, 106 S.Ct. 555, 557, 88 L.Ed.2d 537 (1985). The legislative history seems wholly consistent with my reading, however. The history shows that Congress expedited the review process by cutting back on the second (PRRB) stage not by minimizing the first (fiscal intermediary) stage. Had Congress intended to allow parties judicial review in the absence of fiscal intermediary action, Congress could and would have so provided.

2. Quite simply, the self-disallowing hospitals failed to avail themselves of the avenue of review Congress created for Medicare providers by section 1395oo(f). In their cost reports submitted to the fiscal intermediary, they *could* have requested reimbursement for malpractice costs under the pre–1979 rule. The fiscal intermediary would then have issued notices of program reimbursement denying their claims for excess reimbursement under the pre–1979 rule and granting only the lesser reimbursement available under the 1979 rule. Indeed, the thirty other hospitals in this appeal did precisely that and are entitled to judicial review of their claims.